**ROANOKE GAS COMPANY,**
Plaintiff–Appellant,

v.

**UNITED STATES of America,**
Defendant–Appellee.

No. 91–2220.

United States Court of Appeals,
Fourth Circuit.

Argued June 5, 1992.

Decided Oct. 1, 1992.

---

Wilbur L. Hazlegrove, Woods, Rogers & Hazlegrove, Roanoke, Va., argued (Neil V. Birkhoff, on brief), for plaintiff-appellant.

Jonathan Samuel Cohen, Tax Div., U.S. Dept. of Justice, Washington, D.C., argued (James A. Bruton, Acting Asst. Atty. Gen., Gary R. Allen, Mary Frances Clark, Tax Div., United States Department of Justice, Washington, D.C., E. Montgomery Tucker, U.S. Atty., Ray B. Fitzgerald, Office of U.S. Atty., Roanoke, Va., on brief), for defendant-appellee.

Before HALL and NIEMEYER, Circuit Judges, and TILLEY, United States District Judge for the Middle District of North Carolina, sitting by designation.

## OPINION

NIEMEYER, Circuit Judge:

In this appeal we determine whether a utility's quantifiable obligation to make a future rate adjustment is a deductible business expense for federal income tax purposes.

Under public utility rates established by the Virginia State Corporation Commission, Roanoke Gas Company is entitled to recover from its customers, as part of the rate charged, its cost for purchased natural gas. Because of the lag time between the effective date of a price change for natural gas and the implementation of a rate adjustment to reflect the change, when the price of gas is dropping Roanoke Gas overcollects from its customers for the cost of gas. At the end of each year Roanoke Gas is required to determine the total amount it overcollected from customers for the cost of gas and, in effect, refund the over collections in the next year by an adjustment to the rate it charges its customers.*

In 1987 the State Corporation Commission directed Roanoke Gas to change·to a deferral accounting method for gas costs

---

* Similarly, when the price of gas increases and Roanoke Gas undercollects, the rate adjustment results in a rate increase to recover the under-collections.

and recoveries, requiring it to deduct over-collections received in a given year from the income reported for that year and to recognize them as income in the next year when they are returned to customers through the rate adjustment. At the same time that Roanoke Gas made the accounting change, it changed its overall accounting to the accrual method and claimed that the obligation to refund over collections through the rate adjustment constituted a liability deductible as a business expense for federal income tax purposes. After amending its federal tax returns for the years 1984–86 to claim the deductions, Roanoke Gas sued the IRS for tax refunds of over $2.1 million.

Because we conclude that the obligation to make a future rate adjustment does not constitute an expense but rather represents a regulation of income, we affirm the summary judgment of the district court which rejected Roanoke Gas' claim.

I

Roanoke Gas Company, a public utility engaged in selling and distributing natural gas to residential, commercial, and industrial customers, is regulated by the Virginia State Corporation Commission, which sets the rates that Roanoke Gas may charge its customers. The rate schedules are prescribed following formal hearings and are designed to allow Roanoke Gas to recover the full cost of service to customers, including the cost of gas purchased from suppliers, plus a reasonable return on investment.

Each month the rates set forth in the rate schedules are increased or decreased, without the necessity of full rate-setting proceedings, by an amount called the Purchased Gas Adjustment factor, to reflect the change in variable costs relating to purchased gas. The Purchased Gas Adjustment is calculated by annualizing increases or decreases in cost of gas and adding increases to or subtracting decreases from the base cost, which is the actual cost of gas for the preceding calendar year. Because there is a lag of several months in the determination of the Purchased Gas Adjustment, increases or decreases in purchased gas costs result in the overcollection or undercollection of the base cost that Roanoke Gas is entitled to receive.

At the end of each calendar year, Roanoke Gas compares its actual cost of gas purchased that year with its recoveries of the cost of that gas. To the extent that the cost has been over-recovered or under-recovered, a second adjustment, known as the Actual Cost Adjustment, is applied over the next twelve-month period. If the previous year's costs exceed collections, this adjustment operates to increase rates for the future year; if collections exceed costs, the adjustment reduces future rates.

While the purpose of these rate adjustments is to allow Roanoke Gas to recover previous undercharges or to return to customers previous overcharges, the amount that any one customer has been over-charged or undercharged is not individually computed and accounted for. It is only reflected in the rates charged to all customers at any given time.

Throughout most of the 1970's, when natural gas prices were regulated by the Federal Energy Regulatory Commission, they did not fluctuate widely and therefore did not generate significant overcollections or undercollections under the rate schedule applicable to Roanoke Gas. Beginning in the late 1970's and continuing into the early 1980's, however, partial deregulation, gas reserve shortages, and rapid increases in world oil prices combined to produce significant increases in the price of natural gas. As a result, Roanoke Gas under-recovered its gas costs, requiring positive rate adjustments. Then during the tax years in issue, 1984–86, the cost of gas declined significantly, resulting in significant over-recoveries by Roanoke Gas. Before September 30, 1987, Roanoke Gas treated these over-recoveries and under-recoveries on a cash basis both for financial accounting and tax accounting purposes, recognizing the increases and decreases of income only as they occurred following rate adjustments. Although Roanoke Gas did not attempt to match overcollections and undercollections with the fluctuations

in gas costs on its accounting statements and in its tax returns, it did maintain records reflecting such monthly calculations which it filed with the State Corporation Commission on an annual basis.

By letter dated August 14, 1987, the State Corporation Commission instructed Roanoke Gas to change its accounting method and implement a deferral accounting method by which gas costs and income would be more accurately matched and the rate-making treatment of gas costs recognized. The letter stated:

> In order to recognize the mechanics of the P.G.A. [Purchased Gas Adjustment] factor and to more properly match revenues and expenses, Roanoke Gas Company is hereby instructed to implement deferral accounting to track under-and/or over-recoveries of gas costs recoverable through the PGA factor. *Deferral accounting treatment of these costs will permit Roanoke Gas Company's financial statements to recognize the rate-making treatment of gas costs.*

(Emphasis added.) In 1987 Roanoke Gas began using the deferral method of accounting for its purchased gas costs. It also switched to full accrual accounting to record unbilled revenues from gas sales for financial reporting and for federal income tax purposes as permitted under 26 U.S.C. § 451(f). Using the deferral accounting method, Roanoke Gas included the amount of undercollections (amounts that would actually be collected later) in income for the year in which its gas costs exceeded the rates charged to customers instead of the year in which the customers' bills were increased to collect the undercollections, and it took a deduction from income for the amount of overcollections in the year in which its gas costs were less than the rates charged its customers instead of recognizing less income in the year rates and billings to customers were reduced.

Roanoke Gas also restated its financial statements for calendar year 1984 and fiscal years 1985–86 and recomputed its tax liability for those years. This process resulted in a significant increase in claimed tax deductions for those years, leading to Roanoke Gas' claim for a tax refund for the years 1984–86 in the aggregate amount of $2,151,539.

Roanoke Gas did not obtain the consent of the IRS before making any of the accounting changes.

While Roanoke Gas' tax refund claims were pending, the Virginia State Corporation Commission, in response to Roanoke Gas' request for an interpretation of the Actual Cost Adjustment, stated that the purpose of the adjustment is "to match, as closely as possible, the cost of gas purchased by the Company with the revenues collected from customers applicable to those costs." It also noted that overcollections of purchased gas costs "represent fixed and determinable liabilities and must be fully refunded to customers."

Having agreed to waive notice of disallowance of its refund claims, Roanoke Gas brought suit in the district court for the $2.1 million refund. The parties stipulated to the relevant facts and filed cross-motions for summary judgment. Roanoke Gas contended that the amounts of the overcollections are accrued liabilities that it is entitled to deduct in the same taxable years that such amounts are collected. The IRS countered that Roanoke Gas' obligation to adjust its rates downward in the subsequent year is not an expense, but simply represents the regulation of income. The IRS also argued that Roanoke Gas is foreclosed from obtaining a refund because it failed to secure the approval of the Commissioner of Internal Revenue before changing accounting methods as required by 26 U.S.C. § 446(e).

The district court, granting summary judgment in favor of the IRS, held that the amounts overcollected by Roanoke Gas do not constitute expenses and, therefore, are not deductible:

> [T]he overrecoveries collected by Roanoke Gas are income to Roanoke Gas, and the subsequent reduced rates charged the customers reflect[], not an expense, but a reduction in income. For

this reason, Roanoke Gas is not entitled to the recovery requested in this case. This appeal followed.

## II

■■■ A taxpayer may deduct "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." 26 U.S.C. § 162(a). The determination of whether an amount is paid or incurred is made with reference to the taxpayer's method of accounting. *See* 26 U.S.C. § 461(a) ("The amount of any deduction or credit allowed by this subtitle shall be taken for the taxable year which is the proper taxable year under the method of accounting used in computing taxable income."). While a cash-based taxpayer may only deduct amounts actually paid in the taxable year in which the deduction is claimed, an accrual-based taxpayer may deduct amounts incurred in the taxable year, regardless of when those amounts are actually paid. *See United States v. Hughes Properties, Inc.,* 476 U.S. 593, 599, 106 S.Ct. 2092, 2095, 90 L.Ed.2d 569 (1986). To prove that the claimed expense has been incurred, the taxpayer must satisfy the "all events" test prescribed by Treas.Reg. § 1.461–1(a)(2):

> Under the accrual method of accounting, an expense is deductible for the taxable year in which all the events have occurred which determine the fact of the liability and the amount thereof can be determined with reasonable accuracy.

*See also Hughes Properties,* 476 U.S. at 600, 106 S.Ct. at 2096 (describing the "all events" test as the standard for determining when an expense is incurred); *LX Cattle Co. v. United States,* 629 F.2d 1096, 1098 (5th Cir.1980) (same).

Roanoke Gas argues that when it collects amounts from customers pursuant to rates that are higher than the actual cost of gas justifies, it incurs a "fixed and determinable" obligation to refund those amounts to its customers in the following year. This fixed liability, it contends, satisfies the "all events" test and therefore constitutes a deductible business expense. Roanoke Gas also argues that because the State Corpora-

tion Commission requires it to deduct from income the amounts it is required to refund in the subsequent year, and because this method, according to Roanoke Gas, more clearly reflects its income, this method of accounting is entitled to substantial weight in determining the federal income tax consequences of the claimed deductions.

The IRS argues that Roanoke Gas' obligation to reduce, in future years, the price charged to customers for gas service is not a liability and does not constitute a deductible business expense. It contends that the "all events" test is inapplicable here because the amounts overcollected are not expenses, but merely reductions in future income. The IRS also argues that the State Corporation Commission's order regarding the applicable accounting method is not entitled to deference because the order was issued in 1987, after all of the tax years at issue, without retroactive effect. In any event, the IRS maintains, the deferral accounting method is not determinative of tax effects. Alternatively, the IRS argues that Roanoke Gas is not entitled to a refund because the refund is attributable to a change in accounting method that was made without the consent of the Commissioner.

■ We are first presented with the question of whether the obligation to "refund" overcharges for gas costs through the mechanism of a future rate adjustment is a business expense, as claimed by the taxpayer, or a regulated reduction of income, as argued by IRS.

Although the State Corporation Commission, in its interpretation of the Actual Cost Adjustment, stated that the overcollections of actual gas costs represent "fixed and determinable liabilities" which "must be fully refunded to customers," it is apparent that the rate adjustment does not establish a legal obligation to pay money to any customer overcharged and that it is applied whether the customer was overcharged or not. When a customer who overpaid for gas costs leaves Roanoke Gas' service area, the customer does not have a claim for overpayment. And when a new customer enters Roanoke Gas' service area, the cus-

tomer receives the benefit of the reduced rate without having overpaid for gas during the previous year. Indeed, we note that the adjustment is not an obligation to pay at all. Rather, it implements a policy to allocate income on the books of the utility to a given year in order to match income and costs more accurately.

Moreover, if Roanoke Gas believed that by the required adjustment it has an obligation to make specific refunds to customers, one would expect it to have segregated the funds, or imposed limitations on its use of the money, or at the least paid interest on the funds ultimately returned. *Cf. Illinois Power Co. v. Commissioner*, 792 F.2d 683, 687–90 (7th Cir.1986) (rate increases, adopted by the state commerce commission, which were later disbursed in the form of a credit on the customers bills did not constitute gross income to the utility where the utility functioned as a mere custodian and was required to pay full interest on the amounts collected). To the contrary, Roanoke Gas retained all overcollected funds and used them, permissibly, for general corporate matters without limitation.

The obligation imposed on Roanoke Gas to adjust future rates thus bears few, if any, characteristics of a liability for past overcharges. No payment is ever made, and no credit is shown on any customer's bill. No effort is made to match "refunds" with persons who overpaid or to assure that those who did not overpay do not receive refunds. The rate adjustment, applying to all sales of gas regardless of whether the customer was overcharged, operates simply to control the amount of income that Roanoke Gas may receive relative to its costs for natural gas measured on the previous year's experience and to assign the income to a given year.

In a factually similar case, the Federal Circuit held that the obligation of a utility company to reduce future rates in order to offset surcharges in earlier years did not result in a deductible expense, but merely affected regulated rates for electric service. *Iowa Southern Utilities Co. v. United States*, 841 F.2d 1108, 1113–14 (Fed.Cir.

1988). In that case, the state regulatory commission approved the utility's assessment of a special surcharge on its electric service customers to cover the costs of financing the construction of a new power plant. After the plant began operating, the utility was required to "refund" the amount collected, without interest, in the form of a negative surcharge spread over a thirty-year period. Both the surcharge and the subsequent negative surcharge were calculated on the basis of the number of kilowatt hours of electricity used by each customer.

When the IRS assessed the Iowa utility with deficiencies for failing to report revenue from the surcharge, the utility filed a tax refund suit claiming, among other things, that it was entitled to a simultaneous offsetting deduction for the amount it was obliged to refund in future years. The Federal Circuit rejected the claimed deductions, ruling that the state regulatory commission's directive did not establish a liability for the amounts previously collected, but simply regulated the allowable rates for electric service. The court observed that the negative surcharges would be applied to the bills of all customers during the 30–year period following construction, without regard to whether they were customers when the surcharges were assessed. It noted that former customers who paid surcharges would have no entitlement to any money and current customers who paid surcharges could not purchase electricity at a rate more favorable than current customers who did not pay surcharges. The court held that the utility company "must be viewed simply as enjoying higher rates, and greater income, during the construction period, and lower rates, and presumably less income, during the thirty years that follow completion of the plant." *Id.* at 1114.

We find the reasoning in *Iowa Southern Utilities* persuasive. In the years that follow those in which Roanoke Gas' revenues exceed its costs of purchased gas, it is required, under state regulatory authority, to reduce its rates correspondingly. This scheme simply evidences a declaration of regulatory policy that rates are to reflect,

as accurately as possible, the actual costs of purchased gas. When the State Corporation Commission instructed Roanoke Gas to implement deferral accounting, it confirmed that the purpose was to establish more accurate rates: "Deferral accounting treatment of these costs will *permit Roanoke Gas Company's financial statements to recognize the rate-making treatment of gas costs.*" (Emphasis added.)

We hold therefore that Roanoke Gas' obligation to reduce rates through a future rate adjustment, even if imposed to account for past overcharges, does not constitute an expense, but merely foretells a rate adjustment that, when implemented, regulates income. Because we conclude that the obligation is not a deductible expense, we need not decide whether the "all events" test for determining when an expense accrues has been satisfied.

Roanoke Gas contends that the State Corporation Commission's direction that Roanoke Gas adopt deferral accounting should control the determination of the deductions claimed, relying on *Commissioner v. Idaho Power Co.*, 418 U.S. 1, 94 S.Ct. 2757, 41 L.Ed.2d 535 (1974), which states that "where a taxpayer's generally accepted method of accounting is made compulsory by the regulatory agency *and* that method clearly reflects income, it is almost presumptively controlling of federal income tax consequences." *Id.* at 15, 94 S.Ct. at 2766 (emphasis in original) (footnote omitted). While the deferral method of accounting may characterize the obligation to reduce future rates as a deduction against current income, in fact the method applies only to reallocate income to match expenses. The "deduction" from income for reporting purposes is never an expense, and Roanoke Gas has full use of its collections (including the amounts "deducted" for reporting purposes) with no requirement to pay interest. Such "deductions" are not the same as deductions from taxable income based on ordinary business expenses.

Because we conclude that the obligation to adjust rates to effect a "refund" of overcollections is not a deductible business expense, we need not reach the issue of whether Roanoke Gas should be denied the deduction because it failed to obtain the consent of the Commissioner before changing its accounting methods.

The judgment of the district court is affirmed.

AFFIRMED.