WICOR INC. and Subsidiaries,
Plaintiff,

UNITED STATES of America,
Defendant.

No. 97–C–393.

United States District Court,
E.D. Wisconsin.

Sept. 30, 1999.

Robert Meldman, Margaret Derus, Reinhart, Boerner, Van Deuren, Norris & Rieselbach, Milwaukee, WI, for Plaintiff.

Gerald Leedom, Jeffrey Swyers, United States Department of Justice, Washington, DC, for Defendants.

## DECISION AND ORDER

GOODSTEIN, United States Magistrate Judge.

Plaintiff WICOR Incorporated and its subsidiaries brings this action against the United States, seeking to recover federal income tax and interest of which the plaintiff alleges it was erroneously and illegally assessed by the Internal Revenue Service ("IRS"). This case was randomly assigned to this court and the parties have consented to the court's complete jurisdiction. See 28 U.S.C. § 636(c)(1). Jurisdiction is proper based upon the existence of federal questions. See 28 U.S.C. § 1331. Venue is proper in the Eastern District of Wisconsin. See 28 U.S.C. § 1391(b). Currently pending is the defendant's motion for partial summary judgment. The motion seeks a determination on the Section 1341 issue; the unrelated Section 41 issue was the subject of a court trial which was held in April, 1999. The court originally contemplated issuing a decision on both issues together, but due to the volume of evidence and complexity of issues related to the court trial, further consideration of the Section 41 issue is necessary. Nevertheless, the court is ready to render its decision regarding the motion for summary judgment on the Section 1341 issue.

## I. BACKGROUND

The following material facts are undisputed for purposes of the defendant's motion for summary judgment on the Section 1341 issue. The Wisconsin Gas Company ("WGC"), a regulated gas utility, is a wholly owned subsidiary of WICOR, Inc. The rates WGC charges customers are set and approved by the Public Service Commission of Wisconsin ("PSCW") based on WICOR's costs of operating, in addition to a reasonable profit. To avoid confusion, the plaintiff will be referred to as WICOR throughout this decision.

WICOR seeks an income tax refund for the tax years 1987 through 1991. WICOR claims it is entitled to compute its federal income tax liability under § 1341 of the Internal Revenue Code with regard to prospective rate adjustments required pursuant to PSCW orders dated December 20, 1984, and December 30, 1986. These orders affected WICOR's deferred state tax account and its deferred federal tax account respectively.

The December 20, 1984 order involves WICOR's collection of state taxes. Prior to 1985, WICOR was allowed to include deferred or future-year state taxes in its cost of service computations, which are used by the PSCW to set rates. Thus, WICOR was able to collect money from its customers in 1979, for example, which could be placed in a fund that would be available to pay its state income tax liability in 1982. WICOR established a "deferred state income tax reserve" for this purpose. In 1984, in Order 6650–GR–19, the PSCW directed WICOR to revise its accounting practice by the use of accelerated depreciation with respect to its computation of its Wisconsin income tax. The effect of this change would result in prospective tax savings to WICOR which, in effect, created an excess balance in its tax deferral reserve. The PSCW further directed that such tax savings should "flow through" to the customers, and that the balance in WICOR's Wisconsin deferred tax fund on January 1, 1985, should be amortized over a 14–year period for this purpose. WICOR was not required to issue refunds to customers from this deferred tax fund, but rather, WICOR reduced the rates charged to customers on future bills.

The December 30, 1986 order involves WICOR's collection of federal taxes. Prior to 1987, rates for WICOR customers also took into consideration WICOR's estimated deferred or future-year federal tax liability. As with its state taxes, WICOR established a reserve account to satisfy its future federal tax liability. As a result of the 1986 Tax Reform Act, the highest corporate federal income tax rate was reduced from 46 percent to 34 percent. Since WICOR had been collecting revenue based on the 46 percent rate, the reduction to 34 percent meant that its deferred federal tax reserve was larger than necessary to pay its deferred federal income taxes. In issuing Order 6650–GR–102, the PSCW required WICOR to charge lower rates in light of the 1986 Tax Reform Act, and also directed WICOR to amortize the excess balance in its deferred reserve over a 12–year period in the form of lower rates on bills. As with the prior order, WICOR was not required to issue a refund. .

For tax years 1987 through 1991, WICOR claimed deductions under 26 U.S.C. § 1341, which provides that if:

(1) an item was included in gross income for a prior taxable year (or years) because it appeared that the taxpayer had an unrestricted right to such item;

(2) a deduction is allowable for the taxable year because it was established after the close of such prior taxable year (or years) that the taxpayer did not have an unrestricted right to such item or to a portion of such item; and

(3) the amount of such deduction exceeds $3,000, then the tax imposed by this chapter for the taxable year shall be the lesser of the following:

(4) the tax for the taxable year computed with such deduction; or

(5) an amount equal to—

(A) the tax for the taxable year computed without such deduction, minus

(B) the decrease in tax under this chapter (or the corresponding provisions of prior revenue laws) for the prior taxable year (or years) which would result solely from the exclusion of such item (or portion thereof) from gross income for such prior taxable year (or years).

The IRS regulation interpreting § 1341 provides as follows:

(a) In general.

(1) If, during the taxable year, the taxpayer is entitled under other provisions of chapter 1 of the Internal Revenue Code of 1954 to a deduction of more than $3,000 because of the restoration to another of an item which was included in the taxpayer's gross income for a prior taxable year (or years) under a claim of right, the tax imposed by chapter 1 of the Internal Revenue Code of 1954 for the taxable year shall be the tax provided in paragraph (b) of this section.

(2) For the purpose of this section "income included under a claim of right" means an item included in gross income because it appeared from all the facts available in the year of inclusion that the taxpayer had an unrestricted right to such item, and "restoration to another" means a restoration resulting because it was established after the close of such prior taxable year (or years) that the taxpayer did not have an unrestricted right to such item (or portion thereof).

26 CFR § 1.1341–1.

The IRS refused to apply § 1341 to compute WICOR's tax liability for 1987 through 1991. WICOR then commenced this action seeking a total refund of $509,-504.

## II. ANALYSIS

A motion for summary judgment will be granted when there are no genuine issues as to material fact and the movant is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). As provided under Rule 56(c), only "genuine" issues of "material" fact will defeat an otherwise "proper" motion for summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106

S.Ct. 2548, 91 L.Ed.2d 265 (1986). "[M]aterial" facts are those facts which, under the governing substantive law, "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute over such material facts is "genuine" if the evidence is such that a reasonable trier of fact could find in favor of the nonmoving party. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

The movant bears the burden to establish that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Rule 56(c); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *see also Celotex Corp. v. Catrett*, 477 U.S. at 323, 106 S.Ct. 2548 (the moving party has the responsibility of informing the court of portions of the record or affidavits that demonstrate the absence of a triable issue). In addition, the moving party may meet its burden to show an absence of a material issue by demonstrating "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325, 106 S.Ct. 2548. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255, 106 S.Ct. 2505; *Cain v. Lane*, 857 F.2d 1139, 1142 (7th Cir. 1988); *Spring v. Sheboygan Area School Dist.*, 865 F.2d 883, 886 (7th Cir.1989). If the moving party meets its burden, the nonmoving party then has the burden to present specific facts showing that there is a genuine issue of material fact. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

In this case, the parties concur that there are no genuine issues of material fact and that the task for the court is to determine how § 1341 applies to the undisputed facts. In order to be eligible for a refund under § 1341, WICOR must establish: 1) that an item was included in its gross income for prior taxable years because it appeared that WICOR had an unrestricted right to the income it collected from customers based upon the rates established prior to the 1984 and 1986 PSCW orders; 2) that WICOR is able to deduct the item under another provision in the Internal Revenue Code; and 3) that the amount of such deduction exceeds $3,000.

The government contends that WICOR is not entitled to a refund under § 1341 because WICOR had an *actual*, not an *apparent*, unrestricted right to the income from rates collected prior to the 1984 and 1986 PSCW orders. However, even if WICOR did not have an actual unrestricted right to the funds it collected, the government asserts that the events that defeated WICOR's "right" occurred *after* the years in which WICOR collected the monies. The government submits that the event that occurs to require the taxpayer to repay must arise out of the circumstances, terms and conditions that existed at the time the monies were originally received, and that § 1341 relief cannot be based on subsequent events. The government also contends that the prospective rate reduction does not constitute a deductible event since WICOR did not "restore" any funds to its customers.

In response, WICOR maintains that § 1341 applies when a taxpayer receives income and pays tax on it for one year and then is required to restore the income to another in a later tax year. In this regard, WICOR submits that the requirement to amortize the funds in its reserves and use them for prospective rate reductions does affect its unrestricted right and constitutes a restoration of funds to customers. WICOR also contends that it had an apparent "unrestricted right to the income it collected from its customers because it knows that when it collects these monies to pay deferred taxes, the PSCW will require WICOR to return deferred taxes to their ratepayers if the revenues collected from ratepayers for deferred taxes are not needed to pay taxes. Moreover,

WICOR argues that the government's position that a subsequent event" can defeat application of § 1341 has been rejected by the courts.

The parties do not dispute that an item (the monies collected by WICOR) was included in WICOR's gross income for prior taxable years. The critical issues for the court to resolve therefore is first whether it has been established that WICOR only had an apparent unrestricted right to this income and second, whether it has been shown that WICOR was entitled to a deduction under another section of the Internal Revenue Code.

WICOR primarily relies on three cases to support its argument that it had an apparent unrestricted right for purposes of § 1341: *Dominion Resources v. United States*, 48 F.Supp.2d 527 (E.D.Va.1999); *Van Cleave v. United States*, 718 F.2d 193 (6th Cir.1983); and *Prince v. United States*, 610 F.2d 350 (5th Cir.1980). In *Dominion Resources*, Dominion owned the Virginia Power Company, which generated, transmitted and distributed electricity to customers in Virginia and North Carolina. Virginia Power's rates were based on estimates of its cost of service, including its projected federal income taxes. As with WICOR, Virginia Power's projected federal income taxes included current and deferred taxes and Virginia Power maintained a deferred tax reserve account. When the corporate tax rate was lowered following the 1986 Tax Reform Act, Virginia Power found itself with excess funds in its deferred tax reserve and was therefore required by its regulatory commissions to refund to its customers a portion of the excess deferred tax reserve. Refunds were made by wire transfers to customers, checks to customers or credits to customers' bills.

Dominion sought a tax refund for the 1991 tax year based on § 1341, which was denied by the IRS. The district court reversed the IRS's decision to deny the refund. With regard to the "unrestricted right" requirement, the court held:

Virginia Power appeared to have an unrestricted right to the deferred tax component of its customer rates in the year in which the company included that component as part of the gross income which it reported in the years 1975 through 1987. And, it was not until a subsequent taxable year—1991—that the developments of 1987—the effective date of the Tax Reform Act of 1986— were applied by the Regulatory Authorities to establish that Virginia Power's apparently unrestricted right to the included income did not exist.

*Id.* at 536.

The court rejected the government's argument that Virginia Power had an actual, not an apparent, unrestricted right to the funds:

[N]either the statute nor the controlling Treasury Regulation speak in terms of actual unrestricted rights annulled by subsequent events. Instead, both authorities use the language "appeared" and "unrestricted right" in the year of inclusion in gross income. And, both authorities make qualification for relief depend on the establishment in a later year that the right was not unrestricted. Thus, the temporal language in both the statute and the regulation addresses the subsequent determination that the earlier belief was wrong, not the subsequent occurrence of an event which annuls the previously perceived right.

*Id.* at 538.

Instead, the court advocated de-emphasizing the subsequent events test in favor of focusing on the nexus between events:

[R]eliance on the term "subsequent event" tends to confuse, rather than inform, the appropriate analysis. In all situations involving section 1341, there will be some event which occurs in a year after the filing of the original tax return which will prompt the taxpayer to request a refund. The true focus of the inquiry is whether there is a substantive nexus between the right to the income at

the time of receipt and the subsequent circumstances necessitating a refund.

*Id.* at 540.

As applied to Virginia Power, the court found a nexus between the utility's right to the income at the time of receipt and the circumstances necessitating a refund:

The undisputed facts show that Virginia Power collected the approximately $10 million from its customers from 1975 through 1987 to pay deferred federal income taxes. Although Virginia Power knew that, in later years, it might be required to return a portion of that amount to its customers if it was no longer needed to pay taxes because of a change in the federal corporate tax rate, the facts available in the years of receipt showed an apparently unrestricted right to the income included in gross income in those years. However, inherent in the right to receive the income in those years was the risk that later the right could, to some extent, be defeated.

On this record, it is rather clear that the refund of the excess funds from the Deferred Tax Account arose out of the "circumstances, terms, and conditions" imposed upon Virginia Power's original collection of the funds.

*Id.* at 540–541.

In *Van Cleave v. United States*, 718 F.2d 193 (6th Cir.1983), the taxpayer, a corporate officer, received $332,000 in salary and bonuses in 1974. After an audit, the IRS determined that $57,500 of Van Cleave's salary was excessive and disallowed that portion as a corporate deduction. The corporation had adopted a policy in 1969 whereby corporate officers who received income that was later determined to be excessive by the IRS were required to pay back to the corporation the excessive amount. Van Cleave repaid the corporation and claimed a deduction on his 1975 taxes pursuant to § 1341; the claim was disallowed by the IRS. Van Cleave then brought an action for a refund under § 1341, which was denied by the district

court. The Sixth Circuit Court of Appeals reversed.

The Sixth Circuit stated that the fact that Van Cleave's ultimate right to the compensation was not determined until the occurrence of a subsequent event did not mean that Van Cleave had an unrestricted right to the compensation when he received it:

[T]he fact that a restriction on a taxpayer's right to income does not arise until a year subsequent to the time of receipt does not affect the availability of Section 1341 tax adjustment .... Acceptance of the government's reading of the statute would thwart the ameliorative purpose intended by Congress in enacting the section.

*Id.* at 197.

In *Prince v. United States*, 610 F.2d 350 (5th Cir.1980), a trust was established wherein the beneficiary received regular income payments, on which she paid income tax, until the time of her death. The trust also contained a provision in which the trustee's fees were deducted from the trust income, but payment of such fees was made once every ten years. The beneficiary died in 1971 and a ten-year period for trustee's fees ended in 1973. The trustee petitioned for fees, and the Alabama Supreme Court ruled that the beneficiary's estate owed more than $170,000 to the trustee because insufficient funds had been deducted during the ten-year period. Because the beneficiary had paid taxes on this amount as part of her gross income, her estate claimed an income tax deduction under § 1341. The claim was denied by the IRS. The estate filed a suit for an income tax refund, which was denied by the United States District Court for the Southern District of Alabama.

The Fifth Circuit Court of Appeals reversed the district court's decision. As with the case at bar, the government argued in *Prince* that the estate was not entitled to a deduction because the beneficiary had an actual unrestricted right to the income. The Fifth Circuit stated that

the deductions from the trust had been miscalculated, which resulted in the beneficiary receiving more income from the trust than to what she was entitled. "This income had to be returned. The requirements of Section 1341 were thus clearly satisfied. [The beneficiary] appeared to have an unrestricted right to the income when she received it; it was established in a taxable year after she received it that she did not have such a right." *Id.* at 352.

In opposition to WICOR's position, the government relies on *Blanton v. Commissioner of Internal Revenue*, 46 T.C. 527, 1966 WL 1180 (1966), and its progeny to support its argument that WICOR had an actual, not apparent, unrestricted right to the rates it collected from its customers and is therefore not entitled to relief under § 1341. In *Blanton*, the taxpayer received from a corporation $2,400 each year from 1959 through 1961 as compensation for serving as a corporate director. Subsequent to the taxpayer's receipt of said fees, but before the end of 1962, the corporation and its directors executed a contract which provided that if the IRS determined any director's fees to be excessive, the director agreed to repay the excess portion to the corporation. During a 1963 audit, the IRS determined that one-half the amount of director's fees paid for 1959 through 1961 were excessive. Accordingly, the taxpayer repaid the corporation the amount disallowed and claimed a deduction under § 1341 on his 1963 tax return, which was denied by the IRS. The taxpayer brought a claim in the United States Tax Court, which affirmed the IRS's decision.

The Tax Court held that there was "no question" that the taxpayer had an "unrestricted right" to the director's fees he received from 1959 through 1961. The court noted that under § 1341(a)(2), the lack of an unrestricted right to an income item must arise out of circumstances, terms and conditions of the original payment of such item and not out of circumstances, terms, and conditions imposed by a subsequent agreement between payor and payee. Thus, because the taxpayer was not originally obligated to repay the corporation if such fees were deemed excessive, the taxpayer's unrestricted right to the fees was only defeated by a subsequent event after the close of the tax years in question. *Id.* at 529–530.

In *Pahl v. Commissioner of Internal Revenue*, 67 T.C. 286, 1976 WL 3655 (1976), the IRS determined that the taxpayer—the president of a corporation—received excess compensation in 1969 and 1970. The taxpayer repaid to the corporation the amount considered by the IRS to be excessive in 1972 and claimed a deduction under § 1341 on his 1972 tax return. In 1970, the taxpayer and the corporation entered into a contract wherein the taxpayer agreed to repay the corporation for compensation deemed excessive by the IRS. The IRS disallowed any deduction for compensation amounts attributable to the period before the parties entered into the contract, which was affirmed by the Tax Court. The court noted that at the time the taxpayer received the pre-contract payments, he had no obligation to restore the payments regardless of whether the IRS considered the payments to be excessive. Thus, the court held that the taxpayer had an unrestricted right to those payments that was not qualified by any circumstances, terms, or conditions existing at the time of the receipt of such sums. *Id.* at 289–290.

In *Bailey v. Commissioner of Internal Revenue*, 756 F.2d 44 (6th Cir.1985), the taxpayer—an officer, shareholder and director of a corporation—entered into a consent decree with the Federal Trade Commission in 1971 to cease and desist from operating the corporation in a fraudulent manner. In 1976, the United States District Court for the Northern District of California fined the taxpayer $1 million for violating the consent decree. The taxpayer was allowed to apply the $1–million penalty as restitution in order to settle a class action lawsuit pending against the taxpayer and his corporation. The taxpay-

er then claimed on his 1977 tax return that his $1–million payment qualified for a reduction in tax under § 1341, which was disallowed by the IRS. The Tax Court affirmed the IRS's decision and the Tax Court's decision was affirmed by the Sixth Circuit Court of Appeals. Of relevance to the instant case, the court held that the taxpayer was not entitled to invoke § 1341 because the $1 million payment arose from the fact that the taxpayer violated the consent order and not from the circumstances, terms, and conditions in which the taxpayer originally received compensation from the corporation. *Id.* at 47.

Finally, in *Kraft v. United States,* 991 F.2d 292 (6th Cir.1993), the taxpayer—a physician who received his salary from a corporation of which he was a 50% shareholder—was charged with submitting false insurance claims to Blue Cross/Blue Shield. The taxpayer entered into a plea agreement in 1985, under which the taxpayer agreed to make restitution in the amount of $160,000 to Blue Cross. The taxpayer claimed a refund under § 1341 on his 1986 tax return, which was disallowed by the IRS. The district court affirmed the IRS's determination and the Sixth Circuit affirmed the district court. The Sixth Circuit held that the taxpayer was precluded from invoking § 1341 because the plea agreement, which was the basis for the taxpayer's obligation to pay restitution, did not result from the same circumstances, terms or conditions as the taxpayer's salary from the corporation.

The cases relied on by the government were discussed by the *Dominion* court. Judge Payne attempted to reconcile the *Blanton-Pahl Bailey-Kraft* line of cases with his observation that neither § 1341 nor the accompanying regulation refers to a subsequent events test:

First, it is essential to keep in mind that Section 1341 requires that there be some substantive nexus between the appearance of the unrestricted right and the defeasance of the right in a subsequent year. Second, it is important to

read Blanton and its progeny in perspective of the facts there at issue and to understand what Blanton actually held. In each case, the taxpayer voluntarily took some action after the receipt of apparently unrestricted income which required the taxpayer to thereafter return the remuneration. Blanton and its progeny simply hold that, although such consensual ex post facto arrangements might be contractually binding on the taxpayer, they are insufficient to trigger the benefits of Section 1341.

A careful examination of Blanton, Kraft, Bailey, Pahl, Usher and Revenue Ruling 67–48 discloses that, in each instance, there was no substantive nexus between the appearance of an unrestricted right which had produced the included income and the circumstances which defeated the apparently unrestricted right.

48 F.Supp.2d at 539 (citation omitted).

■ The facts in this case are more closely analogous to Dominion Power than to *Blanton, Kraft, Bailey* and *Pahl* because WICOR, unlike the taxpayers in the aforementioned cases, did not voluntarily take action that required WICOR to return its apparently unrestricted right to income. Rather, the PSCW invoked its rate setting authority which had a direct impact on the funds WICOR had received. The *Dominion* court's reasoning is persuasive with respect to the "apparent unrestricted right" element of § 1341. As with Virginia Power, WICOR had an apparent unrestricted right to the rate revenues it collected from its customers prior to the 1984 and 1986 rate orders. It collected these revenues based on its then assumptions of future year tax liabilities. In its orders, the PSCW changed those assumptions creating an excess in revenues collected. The PSCW orders adversely affected WICOR's apparent unrestricted right to use its deferred tax reserve accounts. This is the substantive nexus that is needed to invoke § 1341.

The § 1341 analysis does not end here, but the similarity between this case and

*Dominion* does cease. For unlike Virginia Power, WICOR was not required to issue rebates. Rather, WICOR was required to lower the future rates it charged customers in light of the 1984 and 1986 rate orders. While this factual distinction does not nullify the conclusion that WICOR's apparent unrestricted right to the rates it collected was defeated by the PSCW orders, it does affect the remaining applicability of § 1341.

■ This is because WICOR must also establish that, as a result of the fact that it had an apparent unrestricted right to the rates it collected that was defeated in subsequent tax years, it was entitled to a deduction under a provision of the IRC. This coincides with the "restoration to another" aspect of the § 1341 analysis. WICOR relies on § 162(a) of the IRC, which entitles a taxpayer to deductions for ordinary and necessary business expenses. *See* 26 U.S.C. § 162(a). Under § 162(a), a taxpayer is allowed a deduction for "all the ordinary and necessary business expenses paid or incurred during the taxable year in carrying on a trade or business." To be deductible as a business expense, the item must be: 1) paid or incurred within the taxable year; 2) incurred in carrying on a trade or business; and 3) both ordinary and necessary. *See Dominion*, 48 F.Supp.2d at 541.

■ In this respect, the factual distinction between WICOR and *Dominion*—WICOR was required to lower rates rather than issue refunds—is crucial to the outcome of this case because future rate adjustments, even if imposed to account for prior overcharges, do not constitute business "expenses" under § 162(a). *See Roanoke Gas Co. v. United States*, 977 F.2d 131, 137 (4th Cir.1992). In *Roanoke*, the Roanoke Gas Company collected rates based on its costs incurred for purchasing gasoline. Due to a lag time between the effective date of a price change for natural gas and implementation of a rate adjustment to reflect this change, Roanoke overcollected for the cost of gas when gas prices dropped. Thus, Roanoke was required at the end of each year to determine the amount it had overcollected and adjust rates accordingly for the next year. Roanoke claimed that the obligation to refund excessive collections through a rate adjustment constituted a deductible business expense under § 162(a). Roanoke sued the government for a $2.1–million tax refund, which was denied by the district court. The Fourth Circuit Court of Appeals affirmed the district court's decision denying the tax deduction to Roanoke.

The Fourth Circuit observed that the rate adjustment did not establish a legal obligation on Roanoke to pay money to customers it overcharged and that the rate adjustment applied whether or not a particular customer was overcharged:

> When a customer who overpaid for gas costs leaves Roanoke Gas' service area, the customer does not have a claim for overpayment. And when a new customer enters Roanoke Gas' service area, the customer receives the benefit of the reduced rate without having overpaid for gas during the previous year. Indeed, we note that the adjustment is not an obligation to pay at all. Rather, it implements a policy to allocate income on the books of the utility to a given year in order to match income and costs more accurately.

> . . . . .

> The obligation imposed on Roanoke Gas to adjust future rates thus bears few, if any, characteristics of a liability for past overcharges. No payment is ever made, and no credit is shown on any customer's bill. No effort is made to match "refunds" with persons who overpaid or to assure that those who did not overpay do not receive refunds. The rate adjustment, applying to all sales of gas regardless of whether the customer was overcharged, operates simply to control the amount of income that Roanoke Gas may receive relative to its costs for natural gas measured on the previous year's

experience and to assign the income to a given year.

*Id.* at 135–136.

Judge Payne distinguished the facts in *Dominion* from the facts in *Roanoke* and concluded that Dominion was entitled to a deduction under § 162: "Quite unlike *Roanoke Gas*, here the Regulatory Authorities required Virginia Power to refund the deferred taxes through a one-time payment, and not by way of future reductions in rates." 48 F.Supp.2d at 544. The facts in this case are more closely analogous to *Roanoke* than to *Dominion* because WICOR was not required to refund deferred taxes through a one-time payment. In fact, the PSCW is not allowed, under Wisconsin law, to order WICOR to issue refunds except under limited circumstances that are not at issue in this case. *See Wisconsin Power & Light Co. v. Public Service Commission*, 181 Wis.2d 385, 393, 511 N.W.2d 291, 294 (1993). Instead, the PSCW lowered the rates that WICOR was allowed to charge in light of the excess reserves in WICOR's deferred tax accounts. As in *Roanoke*, WICOR customers who paid rates for example, based on WICOR's estimated deferred tax liability in 1984, and moved away from WICOR's service area in 1985, did not have a claim against WICOR for recovery of their excess payments. And, as in *Roanoke*, no payments to customers were ever made and no credits were shown on customer bills. In other words, WICOR is unable to show that it "restored" to its customers the rate it had collected in prior years, as required by the Treasury Regulation implementing § 1341. *See* 26 C.F.R. § 1.1341–1. WICOR was not restoring funds because it was not required to issue refunds.

Therefore, the court concludes that WICOR's obligation to reduce rates by means of future rate adjustments was not a deductible business "expense" under § 162(a) because the adjustment simply reduced WICOR's future income. Further, because WICOR is not entitled to a deduc-

tion under § 162(a), it does not qualify for a tax refund under § 1341.

IT IS THEREFORE ORDERED that the defendant's motion for partial summary judgment is granted.