In the
United States Court of Appeals
For the Seventh Circuit

No. 00-4072

WICOR, Inc.,

Plaintiff-Appellant,

v.

United States of America,

Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 97 C 393--Aaron E. Goodstein, Magistrate Judge.

Argued June 5, 2001--Decided August 14, 2001



   Before Posner, Manion, and Rovner,
Circuit Judges.

   Posner, Circuit Judge.  An affiliated
group of corporations that file a joint
federal income tax return brought this
suit on behalf of one of the affiliates,
the Wisconsin Gas Company, a retail
distributor of natural gas, for refund of
federal income taxes. The plaintiff
argues that the gas company was
incorrectly denied a tax credit under
section 41 of the Internal Revenue Code
and an unrelated deduction under section
1341. The district court entered judgment
for the government on the section 41
claim after trial and granted summary
judgment for the government on the
section 1341 claim.

   Section 41 provides a tax credit for
"qualified research," but a taxpayer
seeking the credit must prove that
hesatisfies seven separate requirements.
26 U.S.C. sec.sec. 41(d)(1)(A), (B)(i),
(B)(ii); United Stationers, Inc. v.
United States, 163 F.3d 440, 443-48 (7th
Cir. 1998); Norwest Corp. v.
Commissioner, 110 T.C. 454, 487-501
(1998). Four are at issue here and they
happen to be the ones that seek to limit
the credit to what can fairly be regarded
as significant "discoveries" worthy of
special encouragement. They are that the
research be for the purpose of

"discovering" technological information; that it be experimental in character; that it be innovative; and that it involve significant economic (i.e., financial) risk. These requirements mark off the domain of genuine research from that of implementation of existing research findings, United Stationers, Inc. v. United States, supra, 163 F.3d at 444 ("discovery demands something more than mere superficial newness; it connotes innovation in underlying principle"); Norwest Corp. v. United States, supra, 110 T.C. at 493-96, and we must decide whether the district court committed a clear error in determining that the gas company's "research" fell on the implementation side of the line.

The company wanted to have an integrated computer system that would process service (including repair) orders, record meter readings transmitted to terminals in the company's trucks, bill customers, record transactions with customers, and perform other mainly bookkeeping functions. The company hired Andersen Consulting, which had created similar systems for other utilities, to create, jointly with the gas company, the system that the company wanted. Most of the software for the project was acquired from other companies, but Andersen and the gas company did jointly develop a program for integrating the various components of the system.

Their contract provided that the source code for the integrated computer system would be the property of Andersen. The original of the source code was on the premises of the gas company, yet Andersen didn't think enough of its property right to bother to take a copy with it when the project was completed. Since without the source code it would be very difficult to modify the system to make it usable by other utilities, Andersen apparently didn't think the system would be usable by any other utility. Andersen's abandonment of the source code was pretty telling evidence that the project had involved merely adapting existing computer technology to the special needs of the gas company rather than inventing a new technology, embodied in the source code, that would have a broader applic-ability. Existing technology had to be customized to the particular needs and specifications of a particular customer

of Andersen's; that was all. Genuine innovation portable to other customers would have motivated Andersen to take the source code, the key to the use of the innovation by other customers, with it when it completed the project for the gas company. So the district court did not commit a clear error in finding that the plaintiff had flunked the discovery test, at least; nothing more was required to deny the section 41 tax credit; and we can move on to the second issue.

Section 1341 of the Internal Revenue Code provides, in effect and so far as bears on this case, that if a taxpayerincludes an item in his taxable income in year y "because it appeared that the taxpayer had an unrestricted right to such item," and later, say in y + 1, "a deduction is allowable" for the item because the taxpayer didn't have an unrestricted right to it after all, he can assign the deduction to y, if he wants, and so obtain a larger tax savings if his tax rate was higher in y than in y + 1. See 26 U.S.C. sec. 1341(a), explained in United States v. Skelly Oil Co., 394 U.S. 678, 680-82 (1969), and Dominion Resources, Inc. v. United States, 219 F.3d 359, 362-63 (4th Cir. 2000). The Wisconsin public service commission had allowed the gas company to treat as a cost of service, and hence to include in its rates, certain anticipated but not yet paid tax liabilities. When (we simplify a bit) a change in tax law resulted in a drop in those rates, meaning that the company had charged its customers for a cost it would not incur, the commission required the company to reduce its rates, thus transferring the windfall from the company to its customers.

A numerical example, artificial only in irrelevant respects, may help to illuminate the issue. Suppose that the gas company had obtained the windfall in year y, that the windfall amounted to $100 out of total rates of $300, that the tax rate was 46 percent that year, and that the commission required the company in y + 1, when the tax rate had fallen to 34 percent, to reduce its rate from $300 to $200. In y, the company would have paid a tax of $46 on the windfall. In y + 1, if section 1341 was inapplicable, it would have avoided a tax of $34 (the tax on the $100 that it was not permitted to

include in its rate that year). And so it would end up having paid an additional $12 in taxes as a result of not being able to reassign the $100 rate reduction from y + 1 to y. But if section 1341 is applicable, the company can get a refund of $46 for the taxes it paid in year y, while paying $34 in additional taxes in y + 1. That is, it will pretend that it charged $300 rather than $200 in y + 1 (and so pay an additional $34 in y + 1 taxes), but $200 rather than $300 in y, entitling it to a $46 refund.

The government concedes as it must that (ignoring for a moment the word "appeared" in section 1341(a)(1)) if in y + 1 the gas company, instead of reducing its rate by $100, had charged the full $300 but given the customer a $100 credit, the company would be entitled to treat the $100 credit as if it were a deduction from its y income, and thus receive a $46 refund on its year y taxes. That is how section 1341 operates. Rhetorically the company asks what functional difference there is between such a credit and a reduction in the rate of the same amount. In either case the ratepayer ends up paying a net of $200. There is a difference, however. In the second case the company saves taxes just by virtue of charging a lower rate. The company paid $34 less in taxes in y + 1 because it charged a lower rate. If it can get a credit of $46 for having lost the $100 in windfall profits in y and at the same time, in respect of the same loss, obtain a $34 tax savings in y + 1, its total tax benefit will be not $12 but $80. The company realizes that this is too much and wants only the $12, but this amounts to restating its y + 1 income as $300 and treating the $100 rate discount as if it were a credit on the bill to the customer.

But is this the proverbial distinction without a difference? We cannot think of any fundamental or economic objection to the restatement proposed by the gas company, which would eliminate any difference in taxation between a utility's being forced by the regulators to reduce its rates and its being forced to give its customers a credit in the same amount. Because of customer turnover, the people affected by the different actions will not be identical, but why should that matter? It matters

because we can't locate any provision in the Internal Revenue Code that allows a seller to take a deduction for a discount, and section 1341 is applicable only if "a deduction is allowable" in y + 1. 26 U.S.C. sec. 1341(a)(2). Just the other day we noted the infeasibility and inappropriateness of courts' "undertaking to achieve global equity in taxation." Kenseth v. Commissioner, No. 00-3705, slip op. at 6, 2001 WL 881479, at *3 (7th Cir. Aug. 7, 2001). When a company reduces its price, this event is reflected on its income tax return not by including the old price as taxable income and the difference between the old and the new price as a deduction, but as reducing taxable income to the new price. When that is done for the gas company in y + 1, there is nothing to deduct. Taxable income has fallen from $300 to $200. That is all. Unlike the situation in Dominion Resources, Inc. v. United States, supra, 219 F.3d at 368-70, where the utility "allocate[d] refunds [ordered by the regulatory authorities] to actual customers who had made the overpayments but fail[ed] to make a perfect match only because it was 'not possible' to do so," the gas company made no effort to refund overpayments to particular customers, thus bringing this case within the grasp of Roanoke Gas Co. v. United States, 977 F.2d 131, 135-37 (4th Cir. 1992), and Iowa Southern Utilities Co. v. United States, 841 F.2d 1108, 1113-14 (Fed. Cir. 1988), and making it unnecessary for us to consider the significance of "appeared" in the section ("because it appeared that the taxpayer had an unrestricted right to such item").

The government argues that, precisely because the public utility commission did not order the gas company to refund money to any customer who had paid the inflated rate in year y, there was nothing merely apparent about the company's right to that rate. It got to keep the money, though it was "punished" by being made to reduce its rates for the future, in just the way that the market might "punish" a company for greedily raising its price, inducing entry that forced prices back down, perhaps to a level even lower than before the company succumbed to greed. The company argues that a prospective lowering of rates is the mode of refund that the public utility commission is constrained by law to use. We need not

decide whether the company's right to the initial windfall rate was as the company claims merely apparent, since the decision would not affect the outcome of the case, but will merely note for completeness that the only appellate cases to address the issue have sided with the taxpayer. Dominion Resources, Inc. v. United States, supra, 219 F.3d at 361; Van Cleave v. United States, 718 F.2d 193, 197 (6th Cir. 1983); Prince v. United States, 610 F.2d 350, 352 (5th Cir. 1980).

Affirmed.