# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 00-3958/3959/3960/3961

_____

|  |  |  |
|---|---|---|
| MidAmerican Energy Company, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | Appeals from the |
| | * | United States Tax Court. |
| | * | |
| Commissioner of Internal Revenue, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: September 10, 2001

Filed: November 15, 2001

_____

Before MORRIS SHEPPARD ARNOLD and BRIGHT, Circuit Judges, and KYLE[1], District Judge

_____

MORRIS SHEPPARD ARNOLD

MidAmerican Energy Company, a public utility and retail distributor of electricity and natural gas, sued the Commissioner of Internal Revenue in 1997, largely as a result of changes to the Internal Revenue Code. MidAmerican claimed in that suit that it was being double-taxed at the end of the year because the Commissioner incorrectly rejected its method of accounting, and that it was entitled

_____

[1]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota, sitting by designation.

to a deduction after state regulators forced it to disgorge "excessive" profits. The Tax Court rejected both claims. *See MidAmerican Energy v. Commissioner*, 114 T.C. 570 (2000). We affirm.

## I.

The Tax Court concluded that although MidAmerican's contention that it was being double-taxed was "essentially an accounting dispute," 114 T.C. at 577, it was nonetheless one that the Code resolved. We agree. The 1986 revision of the Code denied utilities the right to use the so-called "cycle meter-reading" method of accounting, a method that had allowed them to defer income from the last billing cycle of a tax year to the next tax year. Under that method, for instance, a utility could bill for services through December 15, and those charges would be counted as income for that tax year; charges for the period of December 16-31, however, would be billed in January and counted as income for that tax year. MidAmerican maintains that it stopped using this accounting method as of 1987, but the Commissioner concluded that MidAmerican's new accounting method continued to defer some income from the last billing cycle of tax years 1987 through 1990.

The relevant portion of the Code provides that "any income attributable to the sale or furnishing of utility services to customers shall be included in gross income not later than the taxable year in which such services are provided to such customers." 26 U.S.C. § 451(f)(1). If services are provided within the last two weeks of December, then revenues realized from those services must be included as income within that tax year, even if bills for those services are sent or paid in the following year.

MidAmerican notes that its monthly billings to customers include a Purchased Gas Adjustment ("PGA"), which is designed to pass through to customers any fluctuations in wholesale gas costs. According to MidAmerican, the PGA does more than just account for market fluctuations: MidAmerican claims that it makes the

billing period serve as a "proxy" for an actual calendar month. A customer might be billed $100 on December 15, for example, and MidAmerican contends that part of that $100 is intended to cover the company's gas costs for the period of December 16 through December 31. According to MidAmerican, the consumption between November 16 and December 15 ( multiplied by current wholesale gas prices) is used to estimate gas costs for the remainder of December; that is, the PGA for November 16 through December 15 serves as a "proxy" for actual gas costs for the entire month of December. Variations in the estimated and actual gas costs are later reconciled in supplemental adjustments to income. MidAmerican argues that under these circumstances it should not have to include the portion of the January bill attributable to gas costs for December 16 through December 31 as part of the preceding year's gross income.

We think that the issue in this case is relatively straightforward: either part of the January bill is attributable to gas used the previous December or it is not. MidAmerican's counsel conceded below that a given month's billing for gas costs is based on usage from the month before: He told the Tax Court that "those bills that are rendered during the month of December include a slice of the consumption from the month of November, it's absolutely true, but they are intended to now pay costs that are incurred during the month of December, calendar December, December 1 through December 31." Thus the heart of MidAmerican's argument seems to be intent. MidAmerican *intends* that costs billed in one period serve as a "proxy" for costs in a following period.

The intent of the taxpayer, however, cannot change the relevant facts – either the bill includes usage from the prior month or it does not. If MidAmerican multiplies cost per unit by the number of units used between November 16 through December 15 and issues a bill, the argument that the gas costs in that bill are actually for gas costs incurred from December 1 through December 31 has no basis in reality. As we see it, it is simply a fanciful, self-serving description of what is happening.

MidAmerican concedes that the January bill includes usage from the prior calendar year, and therefore, we believe, it concedes the entire argument. Under § 451(f)(1), revenues from that bill that derive from usage that occurred in December constitute "income attributable to the ... furnishing of utility services" in December and thus must be included in the prior year.

MidAmerican responds that it is paying a full year's worth of taxes under its method, even if that year does not coincide with the calendar year. As MidAmerican's counsel put it to the Tax Court, "[t]he fact that it's not the exact same 12 months as the calendar year that we file our tax return for simply shouldn't matter." We believe that this is an argument that should be addressed to Congress. As currently written, § 451(f)(1) is quite explicit in requiring that income be attributed to the year in which the service that generated that income is provided.

MidAmerican notes that its accounting methods are dictated, at least in part, by state utility regulators. While that may be true, the Supreme Court has recognized "the vastly different objectives that financial and tax accounting have," and that "any presumptive equivalency between tax and financial accounting would be unacceptable." *Thor Power Tool Co. v. Commissioner*, 439 U.S. 522, 542-43 (1979); *see also Frank Lyon Co. v United States*, 435 U.S. 561, 577 (1978). The Code grants the Internal Revenue Service authority to use its own accounting methods if the methods used by the taxpayer do not produce an accurate accounting of income. *See* 26 U.S.C. § 446(b). We conclude that the Commissioner correctly exercised that authority in requiring MidAmerican to count income from gas used in the final days of December even though that income did not accrue until the following year.

## II.

When state utility regulators determine rates for MidAmerican, those rates compensate for the amount that MidAmerican is expected to pay in federal income tax. When Congress cut the tax rate from 46 percent to 39.95 percent and then to

34 percent, MidAmerican kept the difference and thus made substantially higher profits than state regulators had anticipated. MidAmerican argues that because the state regulators forced it to "refund" the higher-than-anticipated profits to its customers by lowering its rates, it should be entitled to deduct those "refunds" under 26 U.S.C. § 1341. That section allows a deduction if "an item was included in gross income for a prior taxable year ... because it appeared that the taxpayer had an unrestricted right" to it and it was "established after the close of such prior taxable year ... that the taxpayer did not have an unrestricted right to such item." *Id.* The Commissioner counters that state regulators may have, in fact, required MidAmerican to lower its profits in subsequent years, but that those lowered profits cannot be deducted under § 1341.

The Seventh Circuit recently addressed the identical question in *WICOR, Inc. v. United States*, 263 F.3d 659 (7th Cir. 2001). In that case, Wisconsin utility regulators had allowed WICOR, a utility company, to treat anticipated tax liabilities as a cost of service for purposes of setting utility tariffs. *See id.* at 661. After tax rates were lowered, the public service commission required WICOR to lower its prices to compensate for the higher profits. *See id.* WICOR argued, as does MidAmerican, that these mandated lower prices amounted to refunds to its customers of the difference between the original tax rate and the subsequent lower tax rates, and that it should be able to deduct these "refunds" from its current taxes under the terms of § 1341 of the Code. *See id.* at 662.

The Seventh Circuit noted that § 1341 applies only if "a deduction is allowable" for the year in question. *WICOR*, 263 F.3d at 662 (quoting 26 U.S.C. 1341(a)(2)). In other words, the "item" referred to in § 1341 must qualify for a deduction under some other portion of the Code. *See United States v. Skelly Oil Co.*, 394 U.S. 678, 683 (1969). In *WICOR*, 263 F.3d at 662, the taxpayer argued that in essence it had made a deductible "refund" to its customers. The Seventh Circuit concluded, however, that a discount in future profits was not a refund and therefore

was not deductible. *See id.* We agree. Section 1341 requires something deductible, and a reduction in future profits is not a refund, nor is it otherwise deductible.

Our conclusion also finds support in the Fourth Circuit's holding in *Roanoke Gas Co. v. United States*, 977 F.2d 131 (4th Cir. 1992). In that case, Virginia regulators ordered a prospective rate reduction to compensate for the increased profits that the utility had earned as a result of a decrease in gas costs. *See id.* at 135. The court noted that the rate reduction bore none of the usual attributes of a refund since there was no attempt to credit the putative overcharges to the persons overcharged, and the rate reduction was therefore not a deductible expense. *See id.* at 135-36. The court concluded "that the obligation to make a future rate adjustment does not constitute an expense but rather represents a regulation of income." *Id.* at 133.

MidAmerican cites *Dominion Resources, Inc. v. United States*, 219 F.3d 359 (4th Cir. 2000), for the proposition that § 1341 applies when a utility is ordered to refund excess income attributable to lower-than-expected income taxes. We note that *Dominion Resources* can be distinguished because the payments in question there had all the attributes of a true refund and were not merely a reduction in future revenues: there was an attempt to match the amount refunded a given customer to the amount that customer was "overcharged," *see id.* at 369, and the taxpayer made such refunds via wire transfers, checks, or one-time credits, *see id.* at 362. In contrast, we believe that the regulation of MidAmerican's profits by state regulators does not give rise to "refunds" as that word is used either commonly or technically, and thus it is not deductible as such.

In his brief, the Commissioner criticized *Dominion Resources* as contrary to traditional IRS interpretation of § 1341 and argued that the *Dominion Resources* court erred by applying § 1341 too liberally. Thus, the IRS continues its tenacious adherence to its restrictive view of § 1341, arguing that the taxpayer must have had only an "apparent" right to the income in question but not an "actual" right to it before

a deduction is allowable. According to the Commissioner's rationale, if a taxpayer rightfully received title to money in one year but lost that right in a subsequent tax year (and thus had to refund the money), the taxpayer would not be eligible for a deduction under § 1341. Instead, the Commissioner argues, the taxpayer must never have had a right to the income in the first place, but must only have *appeared* to have had a right to it at the time. We do not reach that question in the present case but, as the Seventh Circuit did in *WICOR*, we note that all the appellate courts that have addressed it have rejected the Commissioner's argument. *See Dominion Resources*, 219 F.3d at 363-68, and *Van Cleave v. United States*, 718 F.2d 193, 196-97 (6th Cir. 1983).

III.

For the reasons indicated, we affirm the judgment of the Tax Court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.