# United States Court of Appeals for the Federal Circuit

2006-5142

PENNZOIL-QUAKER STATE COMPANY and subsidiaries,
(successor to Quaker State Corporation and subsidiaries),

Plaintiff-Appellee,

v.

UNITED STATES,

Defendant-Appellant.

Peter A. Lowy, of Houston, Texas, argued for plaintiff-appellee. Of counsel on the brief was J. Bradford Anwyll, Alston & Bird LLP, of Washington, DC.

Deborah K. Snyder, Attorney, Tax Division, United States Department of Justice, of Washington, DC, argued for defendant-appellant. With her on the brief were Eileen J. O'Connor, Assistant Attorney General, and Richard Farber, Attorney.

William L Goldman, McDermott Will & Emery LLP, of Washington, DC, for amicus curiae.

Appealed from: United States Court of Federal Claims

Chief Judge Edward J. Damich

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

2006-5142

PENNZOIL-QUAKER STATE COMPANY and subsidiaries,
(successor to Quaker State Corporation and subsidiaries),

Plaintiff-Appellee,

v.

UNITED STATES,

Defendant-Appellant.

Appeal from the United States Court of Federal Claims in 02-CV-279, Chief Judge Edward J. Damich.

———————————

DECIDED:  January 8, 2008

———————————

Before MAYER, <u>Circuit Judge</u>, JACOBS, <u>Chief Judge</u>[*] and  PROST, <u>Circuit Judge</u>.

Opinion by the Court filed by <u>Chief Judge</u> Jacobs.  Opinion concurring-in-part filed by <u>Circuit Judge</u> Prost.

JACOBS, <u>Chief Judge</u>.

The government appeals from a judgment entered in the Court of Federal Claims on July 27, 2006, granting partial summary judgment to Pennzoil-Quaker State Company ("Quaker") in its suit seeking a refund under Section 1341 of the Internal Revenue Code, 26 U.S.C. § 1341.  That section gives relief to a taxpayer when an item

———————————

[*]    Honorable Dennis Jacobs, Chief Judge, United States Court of Appeals for the Second Circuit, sitting by designation.

of income previously included in gross income is repaid in a year in which the tax rate is lower. Quaker cited payments it made in settlement of an antitrust suit brought by its suppliers of crude oil and argued that those payments retroactively increased Quaker's cost of goods sold ("COGS") in past years, and thus supported retroactive recalculation of taxes previously paid. The Court of Federal Claims agreed. We <u>reverse</u>.

## BACKGROUND

### A. Section 1341

"Income taxes must be paid on income received (or accrued) during an annual accounting period." <u>United States v. Lewis</u>, 340 U.S. 590, 592 (1951). Annual accounting calculates tax due on events taking place during the taxable year without regard to events in prior or subsequent years. Under the "claim of right" doctrine, the taxpayer must include an item of income over which it has a claim of right, or full control, even if that right is imperfect--that is, even if the taxpayer may have to give up, or repay, that income down the road. "Should it later appear that the taxpayer was not entitled to keep the money, . . . he would be entitled to a deduction in the year of repayment; the taxes due for the year of receipt would not be affected." <u>United States v. Skelly Oil Co.</u>, 394 U.S. 678, 680-81 (1969). The offset afforded by the claim of right doctrine can become imperfect if "the tax benefit from the deduction in the year of repayment [differs] from the increase in taxes attributable to the receipt." <u>Id.</u> at 681.

Congress passed § 1341 to make the taxpayer whole in cases where the tax rate is lower in the year of repayment than in the year of original receipt. Section 1341 "applies when a taxpayer repays money in a current year that belongs to someone else, but was money that [the taxpayer] received and included in gross income in a prior

year." Culley v. United States, 222 F.3d 1331, 1332 (Fed. Cir. 2000). The title of the

section is: "Computation of tax where taxpayer restores substantial amount held under

claim of right." The provision operates in the following contingency:

If

> (1) an item was included in gross income for a prior
> taxable year (or years) because it appeared that
> the taxpayer had an unrestricted right to such item;

> (2) a deduction is allowable for the taxable year
> because it was established after the close of such
> prior taxable year (or years) that the taxpayer did
> not have an unrestricted right to such item or to
> a portion of such item; and

> (3) the amount of such deduction exceeds $3,000 . . . .

26 U.S.C. § 1341(a). In that event, the taxpayer "is entitled to either the equivalent of a

refund for income tax paid in the earlier year, or a deduction from income in the year of

repayment, whichever is more beneficial to the taxpayer." Chernin v. United States, 149

F.3d 805, 815 (8th Cir. 1998).

To qualify for § 1341 relief, the taxpayer must satisfy various non-textual

requirements, two of which are relevant here. First, "the taxpayer's obligation to repay

must arise out of the specific 'circumstances, terms and conditions' of the transaction

whereby the amount was originally included in . . . income." Bailey v. Comm'r, 756 F.2d

44, 47 (6th Cir. 1985) (quoting Pahl v. Comm'r, 67 T.C. 286, 289-91 (1976)). This has

been called the "same circumstances" test. Second, the deduction must be "allowable"

under a provision of the Code other than § 1341. See Skelly Oil Co., 394 U.S. at 683.

Section 1341 is further limited by the so-called "inventory" exception, which precludes relief for "any deduction allowable with respect to an item which was included in gross income by reason of the sale" of inventory or stock in trade. 26 U.S.C. § 1341(b)(2).

### B. Quaker's Claim for Relief.

Quaker refines and blends crude oils, and sells its petroleum products to consumers. In 1994, Quaker was sued in a class action by its suppliers of Penn Grade crude. The suppliers charged that, beginning in 1981, Quaker fixed crude oil prices, and lowered and maintained them, in violation of § 1 of the Sherman Act, 15 U.S.C. § 1. Quaker settled with the class in December 1995 for $4.4 million, of which $2.9 million was paid to the suppliers.

On its 1995 and 1996 tax returns, Quaker deducted the settlement payments as "other deductions," a treatment the IRS did not challenge. Later, Quaker filed amended tax returns seeking a refund under § 1341 on the theory that its taxable gross income for the years 1981 through 1995 had been overstated by $4.4 million, the cost of settling the class action lawsuit.

The IRS disallowed Quaker's claim for § 1341 relief. Quaker challenged that determination in the Court of Federal Claims, contending that: if it had incurred the settlement costs during the years when it was buying Penn Grade crude from the suppliers, its COGS would have been higher and its gross income lower by a corresponding amount; the settlement payments established that Quaker no longer had an unrestricted right to its prior understatement of COGS; § 1341 applies to the settlement payments, which paid or restored to its suppliers an item included in gross

income, i.e., understated COGS.  The Court of Federal Claims granted Quaker's motion for partial summary judgment on that claim (the only claim then left in the case[1]).  Pennzoil-Quaker State Co. v. United States, 62 Fed. Cl. 689 (2004).  The government appealed.

The Federal Circuit has jurisdiction over this appeal pursuant to 28 U.S.C. § 1295(a)(3).

STANDARD OF REVIEW

A grant of summary judgment is reviewed de novo.  Adams v. United States, 471 F.3d 1321, 1324 (Fed. Cir. 2006).

DISCUSSION

The government argues chiefly that § 1341 relief is unavailable (1) because Quaker fails to link its settlement payments to its understatement of COGS and (2) because (even if Quaker otherwise satisfies the elements of § 1341(a)) the inventory exception bars relief.

We agree that Quaker's claim fails because the settlement payments did not arise from the same circumstances as Quaker's past understatement of COGS.  Moreover, even if Quaker's claim did not suffer that fatal flaw, relief under § 1341 would be barred by the inventory exception.

I.

"The 'claim of right' interpretation of the tax laws has long been used to give finality to [the annual accounting] period, and is . . . deeply rooted in the federal tax

---

[1] Quaker also brought a claim for tax relief in connection with benefit payments it made to coal miners who were disabled by black lung disease.  At the summary judgment stage, Quaker no longer contested the government's opposition to its black lung claim; accordingly, the Court of Federal Claims entered summary judgment for the government on that claim, a ruling Quaker does not challenge.

system." Lewis, 340 U.S. at 592. Section 1341 is an exception to the claim of right doctrine. The "same circumstances" test, formulated by the Tax Court, "provides appropriate, workable limits" to that exception. Dominion Res. Inc. v. United States, 219 F.3d 359, 367 (4th Cir. 2000). The limitations are that "'the requisite lack of an unrestricted right to an income item permitting deduction must arise out of the circumstances, terms, and conditions of the original payment of such item to the taxpayer.'" Id. (quoting Pahl, 67 T.C. at 290).

An example of the rule in practice is Bailey, in which the taxpayer received dividends, salary, and bonuses as the officer of a corporation, and later paid a civil penalty for violating an FTC order in the work he did for the company. The taxpayer claimed that his payment of the penalty restored an item of income included in his gross income in previous years. The Sixth Circuit invoked the "same circumstances" test to deny § 1341 relief, reasoning that the FTC penalty "arose from the fact that Bailey violated the consent order, and not from the 'circumstances, terms, and conditions' of his original receipt of salary and dividend payments," and that "the amount of the penalty was not computed with reference to the amount of his salary, dividends, and bonuses, and bears no relationship to those amounts." Id. at 47.

The "same circumstances" test likewise barred relief in Uhlenbrock v. Commissioner, 67 T.C. 818 (1977). There, the executor of estate received compensation (as executor) and funds (as legatee); subsequently, the IRS assessed the estate and found the executor partly liable for additional taxes (as both transferee and fiduciary of estate). The Tax Court held that § 1341 did not apply to the executor's share of the assessment because his

> receipt of commissions and his liability for payment of
> the penalty were separate and distinct transactions;
> unquestionably, he would have incurred the liability,
> even if he had received no commissions.  Moreover, the
> amount he received from the estate as commissions
> bore no relationship to the amount he became obligated
> to pay the United States

Id. at 823.  Similarly, in Kraft v. United States, 991 F.2d 292 (6th Cir. 1993), the court barred application of § 1341 where the item included in income (medical fees from Blue Cross) "did not arise out of the same circumstances, terms and conditions" as taxpayer's restitution payment for fraud (to Blue Cross).  Id. at 295.  See Reynolds Metals Co. v. United States, 389 F. Supp. 2d 692, 702 (E.D. Va. 2005) (denying relief where corporation's revenues in prior taxable years "bore no relationship to the amount it became obligated to pay for environmental clean-up" in later year, which was "the result of the enactment of retroactive environmental laws"); Griffiths v. United States, 54 Fed. Cl. 198, 202 (2002) (concluding that taxpayer's settlement of claims for negligence and breach of fiduciary duty arising out of her business had "no connection" to consulting fees she received after selling the business).

In short, where the later payment arises from a different commercial relationship or legal obligation, and thus is not a counterpart or complement of the item of income originally received, the "same circumstances" test precludes application of § 1341.  Cf. Dominion Res., Inc, 219 F.3d at 368 (finding same circumstances test satisfied where public utility's "authorization from regulatory authorities to collect [the charges] and its obligation to repay [portions of the charges] arose from . . . liability to the federal government for deferred income taxes," even though the utility did not repay the same customers who paid the original charges).

Quaker characterizes as follows the connection between the item previously included in its gross income (understatement of COGS) and the item recently restored (the settlement payments):

> [F]rom 1981 to 1995 [Quaker] purchased Penn Grade Crude from independent oil producers who were later plaintiffs in the . . . class action. . . . [T]hese plaintiffs alleged that Quaker underpaid on its purchases (i.e., the "origin of the claim" is Quaker's 1981 to 1995 purchases of crude oil from the independent oil producers). . . . [T]he payment at issue related to Quaker's singular transactional relationship with [its crude oil suppliers].

Quaker Br. at 39. The government argues that this connection does not satisfy the same circumstances test, and we agree.

Quaker fails the test because the two transactions are not complementary in terms of (1) the theory of deductibility, (2) the taxpayer's tax treatment, or (3) the underlying transactions.

(1) Section 1341 "applies only if 'a deduction is allowable' for the year in question. In other words, the 'item' referred to in § 1341 must qualify for a deduction under some other portion of the Code." MidAmerican Energy Co. v. Comm'r, 271 F.3d 740, 743 (8th Cir. 2001) (quoting Wicor, Inc. v. United States, 263 F.3d 659, 662 (7th Cir. 2001)). The parties agree that Quaker can deduct the settlement payments as "an ordinary and necessary [business] expense" pursuant to 26 U.S.C. § 162. The IRS did not dispute that treatment in Quaker's initial filings for 1996 and 1997. But COGS, the item Quaker claims was included in its gross income, is not deductible. "The cost of goods sold, if underreported, is not a deduction from income. Rather it is an expenditure which, when correctly stated, the taxpayer is entitled to subtract from his or her gross receipts in the process of computing gross profit and, thus, total income."

United States v. Fawaz, 881 F.2d 259, 264 (6th Cir. 1989); see In re Lilly, 76 F.3d 568, 572 (4th Cir. 1996) ("such costs cannot logically be treated as deductions from gross income"); Metra Chem. Corp. v. Comm'r, 88 T.C. 654, 661 (1987) (COGS is not treated as deduction from gross income, but rather is "subtracted from gross receipts to arrive at gross income").

(2) It follows that Quaker's claim contains a big--and fatal--conceptual defect: for purposes of the "item included" requirement under subsection (a)(1), Quaker treats the $2.9 million as COGS; but for purposes of "deduction allowable" requirement under subsection (a)(2), Quaker treats it as a settlement payment. There is thus a disconnect between the purported item included in gross income (understatement of COGS) and the item restored (a negotiated lump sum payment to settle a lawsuit). This problem is intractable: COGS cannot be deducted, and settlement payments are not included in gross income.

(3) There was no restoration at work here. Quaker received funds from its petroleum product customers; Quaker subsequently passed some of those funds to its crude oil suppliers under the settlement agreement. We need not decide whether restoration requires the repayment of a sum calculated according to the same principles, in respect of the same transaction, paid to the same person; here, the sum was calculated to meet the needs of a different transaction with payment to another party altogether.

The government makes this argument forcefully, and Quaker largely concedes that it has not "restored" a sum to the same party on account of the same transaction or series of transactions. Instead, Quaker argues that because the term "restoration"

appears nowhere in the text of § 1341--but only in the title--there is no restoration requirement at all.

True, "the title of a statute . . . cannot limit the plain meaning of the text." Pa. Dep't of Corrs. v. Yeskey, 524 U.S. 206, 212 (1998) (internal quotation marks and citation omitted). But restoration is a requirement of § 1341 imposed by the courts, which we decline to revisit. See Culley v. United States, 222 F.3d 1331, 1335 (Fed. Cir. 2000) (explaining that taxpayer "must also show that the $3 million he restored . . . related to items included in his gross income in [the prior taxable year]" and that "it appeared he had an unrestricted right to those items in [that year]" (emphasis added)); Chernin v. United States, 149 F.3d 805, 816 (8th Cir. 1998) ("We therefore conclude that under section 1341(a)(2), funds must actually be repaid to establish that the unrestricted right to those funds has been lost."); Reynolds Metals, 389 F. Supp. 2d at 699 (noting the "simplicity embodied" by § 1341 "so that taxpayer is restoring an amount previously received to his boss, an estate, a partnership or a trust, for example"); see also Mertens Law of Federal Income Taxation § 12A:127 (2007) ("A taxpayer's relief under Section 1341 resides in the computation of the tax for the year for which he may be allowed the deduction of the amount restored." (emphasis added)). Moreover, the Treasury regulation that interprets § 1341--which is "binding so long as [it] implement[s] congressional mandate in some reasonable manner and [is] not arbitrary, capricious or manifestly contrary to the Internal Revenue Code," Suzy's Zoo v. Comm'r, 273 F.3d 875, 881 n.7 (9th Cir. 2001)--speaks directly to a restoration requirement. Titled "Restoration of amounts received or accrued under claim of right," the regulation explains that § 1341 applies "[i]f . . . the taxpayer is entitled . . . to a deduction . . .

because of the <u>restoration</u> to another of an item which was included in the taxpayer's gross income for a prior taxable year (or years) under a claim of right." 26 C.F.R. § 1.1341-1(a) (emphasis added). The regulation goes on to define "restoration to another" as "a restoration resulting because it was established after the close of such prior taxable year (or years) that the taxpayer did not have an unrestricted right to such item (or portion thereof)." <u>Id.</u>

Accordingly, we hold that Quaker cannot invoke § 1341 for its settlement payments.

II.

Section 1341 does not apply here for an alternative reason: the inventory exception. The inventory exception precludes § 1341 relief for:

> any deduction allowable with respect to an item which was included in gross income by reason of the sale or other disposition of stock in trade of the taxpayer (or other property of a kind which would properly have been included in the inventory of the taxpayer if on hand at the close of the prior taxable year) or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business.

26 U.S.C. § 1341(b)(2). Significantly (for a reason set forth <u>infra</u>), the inventory exception is inapplicable

> if the deduction arises out of refunds or repayments with respect to rates made by a regulated public utility . . . if such refunds or repayments are required to be made by the Government, political subdivision, agency, or instrumentality referred to in such section, or by an order of a court, or are made in settlement of litigation or under threat or imminence of litigation.

<u>Id.</u>

Quaker and the government read the inventory exception to say different things. For purposes of analysis, the relevant language is in the following three phrases:

[A] any deduction allowable

[B] with respect to an item which was included in gross income

[C] because of the sale or other disposition of . . . property such as inventory

The controversy is over which phrase, [A] or [B], is modified by [C].

Quaker argues that [C] modifies [A], and therefore that the exception applies only where the "deduction in the current year is allowable 'by reason of the sale or other disposition of [inventory]'--i.e., an inventory-type deduction such as sales returns, allowances and similar items." Quaker Br. at 46. If this reading is correct, Quaker's claim withstands the exception because its proposed deduction (for class action settlement expenses) does not stem from a return of sales.

The government argues that [C] modifies [B], and therefore that the exception applies when the "item of gross income received in a prior year . . . was attributable to the taxpayer's sale of products properly classified as inventory." Government Br. at 54. Under this interpretation, Quaker's claim would be disallowed because the "item included in gross income"--an understatement of COGS--is attributable to Quaker's sale of inventory.

In aid of its interpretation, Quaker points to 26 U.S.C. § 462, which was enacted the same year as the inventory exception (and repealed three years later). Essentially, § 462 allowed retailers to estimate future sales returns and set aside a reserve account based on those estimates; retailers could then deduct the amount placed in the reserve account from their taxable income. Quaker contends that the legislative history

illustrates that the inventory exception was designed to assure that taxpayers could not obtain relief under <u>both</u> sections 1341 <u>and</u> 462. Accordingly, argues Quaker, the inventory exception applies only when the taxpayer's proposed deduction is based on sales returns or allowances.

Quaker also relies on the Treasury Regulation, which states in relevant part:

> [T]he provisions of section 1341 . . . do not apply to deductions attributable to items which were included in gross income by reason of the sale or other disposition of stock in trade of the taxpayer . . . or property held by the taxpayer primarily for sale to customers in the ordinary course of the taxpayer's trade or business. This section is, <u>therefore, not applicable to sales returns and allowances and similar items</u>.

26 C.F.R. § 1.1341-1(f) (emphasis added). Quaker reads the underlined phrase to say that the inventory exception applies exclusively to "sales returns and allowances and similar items." Quaker Br. at 55.

"Our first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case. Our inquiry must cease if the statutory language is unambiguous and the statutory scheme is coherent and consistent." <u>Robinson v. Shell Oil Co.</u>, 519 U.S. 337, 340 (1997) (internal quotation marks and citation omitted).

The wording of the inventory exception is clear as a grammatical matter. A modifying phrase attaches to its closest referent; so phrase [C] ("because of the sale . . . of . . . inventory") would ordinarily modify phrase [B] ("which was included in gross income"). Accordingly, if the "item was included in gross income for a prior taxable year" because of the sale of inventory, then the inventory exception precludes section

1341 relief. 26 U.S.C. § 1341(a)(1). The Treasury Regulation, which recites the inventory exception and infers "therefore" that § 1341 provides no relief for transactions in inventory, is not to the contrary. The word "therefore" means "as a consequence [or] it must follow." Bryan A. Garner, The Elements of Legal Style 141 (1991). The Treasury Regulation can be made to say no more than that "sales returns and allowances and similar items" are examples of situations where the inventory exception applies; they do not delimit the exception. Mertens, a leading tax treatise, explains that the inventory exception "is not limited to sales returns, but [rather] the Regulations use this merely to provide an example of the inventory exception. For example, amounts for which the taxpayer is liable due to a patent infringement fall within this exception if the infringement is related to the inventory goods." Mertens Law of Federal Income Taxation § 12A:130 (2007).

Moreover, if the inventory exception were limited to sales returns and allowances, it would have been unnecessary to carve out public utilities' refunds or repayments in the final sentence of § 1341(b)(2). A "sales return" is defined as "merchandise given back to the seller because of defects," while a "sales allowance" is defined as a "reduction in the selling price of goods because of a particular problem (e.g., breakage, quality deficiency, incorrect quantity)." Dictionary of Accounting Terms 387, 386 (3d ed. 2000). A public utility's government- or court-ordered rate refund is neither of those things. Quaker's narrow interpretation of the inventory exception would therefore render the public utility exception to the inventory exception superfluous--an impermissible reading. See Williams v. Taylor, 529 U.S. 362, 404 (2000) ("It is . . . a

cardinal principle of statutory construction that we must give effect, if possible, to every clause and word of a statute." (internal citation and quotation marks omitted)).

Finally, the plain language of § 1341 makes no reference to § 462. We are therefore unconvinced that the legislative history of § 462 can bear the weight Quaker gives it.

For these reasons, we conclude that the inventory exception applies where the item was included in gross income because of the sale of inventory.

COGS, or cost of sales, is "the price of buying or making an item that is sold." Dictionary of Accounting Terms 110. Over a given period, it is calculated as the dollar value of beginning inventory, plus purchases, less the dollar value of ending inventory. Id. at 111. In short, COGS is a measure of inventory sales.

Quaker claims that by underpaying for crude oil, it overstated its gross income. That is another way of saying that it underpaid for inventory and thereby overstated its inventory sales. The sale of inventory is inextricably linked to the purchase of inventory to sell. Therefore, even if Quaker could make the link between its understatement of COGS and its subsequent settlement payments, the inventory exception would bar relief.

## CONCLUSION

For the foregoing reasons, the judgment of the Court of Federal Claims is

## REVERSED.

# United States Court of Appeals for the Federal Circuit

2006-5142

PENNZOIL-QUAKER STATE COMPANY and subsidiaries,
(successor to Quaker State Corporation and subsidiaries),

Plaintiff-Appellant,

v.

UNITED STATES

Defendant-Appellee.

Appeal from the United States Court of Federal Claims in 02-CV-279, Chief Judge Edward J. Damich.

PROST, Circuit Judge, concurring-in-part.

I join the majority opinion with respect to part II, and therefore concur in the result. I believe the inventory exception applies to exclude from 26 U.S.C. § 1341(a) the transactions in this case, as clearly explained by the majority opinion. I would, however, reverse solely on that ground because I have some doubts about the government's position with respect to the initial applicability of § 1341 in this case.

As an initial matter, I believe that the "item" included in gross income refers here to Quaker's "gross income derived from business," as set forth in 26 U.S.C. § 61. Just as the cost of goods sold ("COGS") is a component in the calculation of income, not a separate deduction, the "item" at issue in this case refers to Pennzoil-Quaker State Company's ("Quaker's") business income as a whole; COGS comprises one component of that income. When the settlement payment resulted from underpayment of COGS—a transaction affecting the item included in income—the requirements of § 1341(a) were met.

The government argues for, and the majority adopts, a requirement that the item included in income, to which § 1341 applies, must itself qualify for a deduction. But any requirement for such a close relationship between the item included in income and the later deduction finds little support in the statute or case law. The statute simply requires a deduction allowable "because . . . the taxpayer did not have an unrestricted right to such item." 26 U.S.C. § 1341(a). I read no requirement that the item itself qualify for a deduction, but rather understand the statute to require only that the deduction be a result of a change in the taxpayer's right to the item. Indeed, in many circumstances, the "item" included would result from receipts that increased the taxpayer's taxable income in a prior year; such receipts would never constitute the basis for a deduction.

Case law addressing the relationship between the item included in income and the later deduction offers little guidance. Reliance on MidAmerican Energy Co. v. Comm'r, 271 F.3d 740 (8th Cir. 2001), seems misplaced where that decision merely characterized a prior decision from the Seventh Circuit, Wicor, Inc. v. United States, 263 F.3d 659 (7th Cir. 2001). In Wicor, the court was discussing whether anything in the case qualified as a deduction, not whether the item included in income could qualify for a deduction. Id. at 662. I have no doubt that COGS is merely one component in the computation of income from business. But the unavailability of a deduction for COGS does not mean that §1341 cannot apply to transactions involving COGS. In short, neither the statute nor the case law requires the type of relationship argued by the government.

Here, Quaker took an ordinary business expense deduction as a result of settling a lawsuit that challenged the price Quaker paid for raw goods. Quaker made the

settlement payment because it owed more money than it paid for those goods; as a result, it did not have an unrestricted right to the full income it had stated in earlier years. As I read the statute, this course of events satisfies § 1341(a).

Finally, I see no requirement for a "restoration" in the statute such that the taxpayer claiming treatment under § 1341 must return money to a party that had previously given the taxpayer money. Unlike the majority, I do not read Culley v. United States to establish any restoration requirement. 222 F.3d 1331 (Fed. Cir. 2000). Rather, the taxpayer in that case undoubtedly made a restoration—by returning money to the parties that had paid the taxpayer initially. Id. at 1335. The only two issues, therefore, were whether the restoration related to the items included in gross income, and whether it appeared that the taxpayer had an unrestricted right to the item in the prior year. Id. The court explicitly limited its analysis to the latter question of the appearance of an "unrestricted right." Id. Thus, I do not read this case as establishing a restoration requirement under § 1341. Nothing in the statute limits its applicability to repayment of prior receipts.

Having rejected the grounds upon which the government relies for its position in this case, I would hold that Quaker can invoke § 1341 for its settlement payments. As the majority explains, however, the inventory exception of § 1341(b) precludes favorable tax treatment for Quaker in this instance. Therefore, I join the majority in reversing.