ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeals of - | ) |
| | ) |
| David Boland, Inc. | ) ASBCA Nos. 63007, 63008 |
| | ) |
| Under Contract Nos. W91278-16-D-0013 | ) |
| T.O. W912QR-18-F-0567 | ) |

APPEARANCES FOR THE APPELLANT:      Denis L. Durkin, Esq.
                                                                      Baker & Hostetler LLP
                                                                      Orlando, FL

                                                                   W. Barron A. Avery, Esq.
                                                                   Brian V. Johnson, Esq.
                                                                      Baker & Hostetler, LLP
                                                                      Washington, DC

APPEARANCES FOR THE GOVERNMENT:      Michael P. Goodman, Esq.
                                                                           Engineer Chief Trial Attorney
                                                                        David C. Brasfield, Jr., Esq.
                                                                        Kristine M. Knodel, Esq.
                                                                           Engineer Trial Attorneys
                                                                           U.S. Army Engineer District, Mobile

OPINION BY ADMINISTRATIVE JUDGE SWEET

ASBCA Nos. 63007 and 63008 involve task orders (TOs), which required appellant, David Boland, Inc. (Boland), *inter alia*, to provide modular office space or temporary swing space trailers (Trailers) while repairing and expanding a Medical Facility and a Weapons Vault Space Facility respectively at Homestead Air Reserve Base (HARB). Boland claims that the United States Army Corps of Engineers (government) constructively changed[1] the TOs when its authorized representative directed Boland to provide telecommunications systems to the Trailers.[2] On April 22, 2022, Boland moved

---

[1] Boland brings both a constructive change and a breach of contract claim (compl. at 34-39). Because the breach of contract claim depends upon a purported constructive change (*id*. at 38), and we find that there is no genuine issue of material fact suggesting that there was a constructive change, we deny the breach of contract claim for the reasons discussed herein.

[2] Boland also alleges that the government constructively changed the TOs when it directed Boland to provide a Base Defense Operations Center (BDOC) in the Weapons Vault Space Trailer. However, it does not make any arguments about

for summary judgment in each appeal. The government opposed those motions, and cross-moved for summary judgment. The government argues that there was no constructive change because the TOs required Boland to provide the telecommunications systems to the Trailers. Boland disputes that argument.

As discussed in greater detail below, the government is entitled to judgment as a matter of law. There is no genuine issue of material fact suggesting that the government constructively changed the TOs when it required Boland to provide telecommunications systems because the TOs unambiguously required Boland to provide such systems. Therefore, we deny Boland's motions for summary judgment, and grant the government's cross-motions for summary judgment. We deny the appeals.

STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

I.     The D0013 Contract and the TOs

1. On December 23, 2015, the government awarded Contract No. W91278-16-D0013 (D0013 Contract) to Boland. The D0013 Contract was an indefinite delivery, indefinite quantity contract. (63007 ASUMF ¶ 1; Resp. 63007 ASUMF ¶ 1; 63008 ASUMF ¶ 1; Resp. 63008 ASUMF ¶ 1)[3] The D0013 Contract included a Federal Acquisition Regulation (FAR) 52.243-4 Changes clause (63007 R4, tab 4 at 189-90; 63008 R4, tab 4 at 189-90), which entitled Boland to an equitable adjustment for any changes (63007 ASUMF ¶ 3; Resp. 63007 ASUMF ¶ 3; 63008 ASUMF ¶ 3; Resp. 63008 ASUMF ¶ 3).

2. Pursuant to the D0013 Contract, the government issued Task Orders Nos. W912QR-18-F-0567 and W912QR-18-0564 (collectively TOs) for repairs and additions to the B-347 Medical Facility and the B-353 Weapons Vault Space respectively at the HARB on September 30, 2018 (63007 ASUMF ¶ 6; Resp. 63007 ASUMF ¶ 6; 63008 ASUMF ¶ 6; Resp. 63008 ASUMF ¶ 6; 63007 R4, tab 5; 63008 R4, tab 5).

3. The TOs also required Boland to provide Trailers (63007 ASUMF ¶ 8; Resp. 63007 ASUMF ¶ 8; 63008 ASUMF ¶ 8; Resp. 63008 ASUMF ¶ 8).

---

the BDOC separate from the telecommunications systems. Thus, we address the BDOC as part of the telecommunications systems, and deem any arguments regarding the BDOC separate from the telecommunications systems waived. *See Hannon v. Dep't of Justice*, 234 F.3d 674, 680 (Fed. Cir. 2000).

[3] Citations to the ASUMF or the Resp. ASUMF are to Boland's statement of undisputed material facts and the government's response respectively. The prefixes 63007 and 63008 to the citations to the ASUMF, Resp. SUMF, briefs, and Rule 4 files refer to the documents in ASBCA Nos. 63007 and 63008 respectively.

4. The RFPs included design requirements. The specifications addressing the Trailers (Trailer Specifications) stated that:

> The [Design-Build Team (DBT)] shall provide temporary facilities as shown in Appendix A – Concept Drawings. Each modular office space unit shall not exceed 5000 square feet. DBT shall tie into existing utilities as designated and maintain these utilities until completion of the project. The work includes delivery, erection, and removal of temporary facilities including all necessary furnishings adequate for the duration of the project, complete and ready for use. Provide anchors, piers and tie-down components, used in the installation of temporary units, tested, listed and approved by all applicable [Florida] codes and regulations. Stairs, ramps, platforms and railings shall be provided and as required to facilitate access from finished grade to the temporary housing units. Construct stairs, ramps, and railings in accordance with [National Fire Prevention Association] 101. The facility shall be connected to existing sanitary collection, water distribution, and electrical systems.

(63007 R4, tab 5 at 45; 63008 R4, tab 5 at 42; *see also* 63007 ASUMF ¶ 11; Resp. 63007 ASUMF ¶ 11; 63008 ASUMF ¶ 11; Resp. 63008 ASUMF ¶11) Amendments to the Trailer Specifications added that "[s]paces required for the trailers are shown on Drawing GC002. The room square footages are flexible as long as they are functional for the intended usage" (63007 R4, tab 5 at 45; 63008 R4, tab 5 at 43).

5. Concept Drawings GC002 indicated that the Trailers would include communications rooms, which Concept Drawings GC002 described as "SEPARTE UTILITY ROOM[S]" (63007 ASUMF ¶ 19; Resp. 63007 ASUMF ¶ 19; 63008 ASUMF ¶ 19; Resp. 63008 ASUMF ¶ 19; 63007 R4, tab 5 at 168, 329, 1278; 63008 R4, tab 5 at 164, 321, 1505). Concept Drawings GC002 reiterated that "sizes are flexible to work with standard commercial trailers. However, spaces are required to be functional for their intended use" (63007 R4, tab 5 at 168; 63008 R4, tab 5 at 164). As an unrebutted declaration from the government indicates, the communications rooms required telecommunications systems in order to be operational and functional. (63007 gov't resp. ex. C (Kling Decl.) ¶ 8; 63008 gov't resp. ex. C (Kling Decl.) ¶ 8).

6. Concept Drawings CU300 showed proposed sanitary sewer and water lines connected to the Trailers, but did not show proposed telecommunications lines connected to the Trailers (63007 R4, tab 5 at 1281; 63008 R4, tab 5 at 1508). However, specification 01 02 10.00 06, ¶ 3.4.1 (General Utility Design Requirements) stated that "[t]he utility design required for this project shall include, but may not be limited to, the

3

items listed within this section and as shown in the Drawings provided within Appendix A – Concept Drawings" (63007 R4, tab 5 at 865; 63008 R4, tab 5 at 45).

7. The TOs also included a Design Submission Requirements After Award specification, which provided that "[t]he design submittals . . . shall also include all utilities required for the Temporary Trailers to be operational and usable" (63007 ASUMF ¶ 28; Resp. 63007 ASUMF ¶ 28; 63008 ASUMF ¶ 28; Resp. 63008 ASUMF ¶ 28).

8. The TOs also provided that "[n]either the Government's review, approval or acceptance of . . . the services required under this Contract shall be construed to operate as a waiver of any rights under this Contract . . . ." (63007 R4, tab 5 at 823; 63008 R4, tab 5 at 1,053).

II.     Performance

9. After award, Boland submitted design packages for the Trailers, which did not reflect telecommunications lines connected to the Trailers (63007 ASUMF ¶ 31; Resp. 63007 ASUMF ¶ 31; 63008 ASUMF ¶ 33; Resp. 63008 ASUMF ¶ 33; 63007 app. supp. R4, tab 2; 63008 app. supp. R4, tab 2). The government approved that design package (63007 ASUMF ¶ 32; Resp. 63007 ASUMF ¶ 32; 63008 ASUMF ¶ 34; Resp. 63008 ASUMF ¶ 34).

10. Boland provided Trailers without telecommunications systems. Boland relied upon wireless internet and phone connectivity during construction and installation. (63007 app. reply ex. B (Hildebrandt Decl.) ¶¶ 4-5; 63008 app. reply ex. B (Hildebrandt Decl.) ¶¶ 4-5)

11. On January 22, 2019, the Air Force Reserve Command—the essential owner and user of the Facilities—asked Boland about landline and internet access for the Trailers (63007 ASUMF ¶¶ 39-41; Resp. 63007 ASUMF ¶¶ 39-41; 63008 ASUMF ¶¶ 41-43; Resp. 63008 ASUMF ¶¶ 41-43). Boland responded that telecommunications systems were not part of the TOs (63007 ASUMF ¶¶ 42-43; Resp. 63007 ASUMF ¶¶ 42-43; 63008 ASUMF ¶¶ 44-45; Resp. 63008 ASUMF ¶¶ 44-45).

12. The initial administrative contracting officer (ACO) issued Requests for Proposals for the design and installation of telecommunications systems to the Trailers because:

> In my view, the [TOs were] not sufficiently clear to direct [Boland] to complete the [telecommunications] requirement[s]. Unlike electrical, the specification[s] did not explicitly state [] communications system[s were] required to be provided to the temporary swing space[s]. In addition, the

4

conceptual drawings did not show [] communication[s] line[s] connected to the temporary swing space[s].

(63007 gov't resp. ex. B (Crawford-Mancini Decl.) ¶ 13; 63008 gov't resp. ex. B (Crawford-Mancini Decl.) ¶ 13). However, the initial ACO recognized that "communications system[s were] required by the user for internet and phone service" (63007 gov't resp. ex. B (Crawford-Mancini Decl.) ¶ 11; 63008 gov't resp. ex. B (Crawford-Mancini Decl.) ¶ 11).

13. Boland submitted a proposal (63007 ASUMF ¶ 48; Resp. 63007 ASUMF ¶ 48; 63008 ASUMF ¶ 54; Resp. 63008 ASUMF ¶ 54).

14. Instead of issuing a modification, a new ACO sent Boland a letter on August 6, 2019, stating that "[i]n accordance with the specifications for the above titled contract, you are to provide all utility connections to the temporary swing spaces in order to make them complete and ready for use. This includes temporary telephone, telegraph, television and/or data communications." (63007 R4, tab 11; 63008 R4, tab 11)[4]

15. Boland responded that it considered the directive a change (63007 ASUMF ¶¶ 62-63; Resp. 63007 ASUMF ¶¶ 62-63; 63008 ASUMF ¶ 68; Resp. 63008 ASUMF ¶ 68).

III.     Procedural History

16. Boland submitted requests for equitable adjustments, which it converted to claims for providing telecommunications systems to the Trailers (63007 ASUMF ¶¶ 72-75; Resp. 63007 ASUMF ¶¶ 72-75; 63008 ASUMF ¶¶ 77-80; Resp. 63008 ASUMF ¶¶ 77-80).

17. The contracting officer issued final decisions (COFDs) on the claims, granting Boland's claims in part, while denying the portions of the claims seeking compensation for the alleged constructive change (63007 ASUMF ¶¶ 76-77; Resp. 63007 ASUMF ¶¶ 76-77; 63008 ASUMF ¶¶ 81-82; Resp. 63008 ASUMF ¶¶ 81-82).

18. These appeals followed.

---

[4] We adopt the August 6, 2019 letter's definition of telecommunications systems as "temporary telephone, telegraph, television and/or data communications" utility connections (63007 R4, tab 11; 63008 R4, tab 11).

DECISION

We grant the government's motions for summary judgement, and deny Boland's cross-motions for summary judgment, because there is no genuine issue of material fact suggesting that there was a constructive change.

I.      Summary Judgment Standard

We will grant summary judgment only if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "All significant doubt over factual issues must be resolved in favor of the party opposing summary judgment." *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390-91 (Fed. Cir. 1987). In deciding summary judgment motions, we do not resolve controversies, weigh evidence, or make credibility determinations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Moreover, we draw all reasonable inferences in favor of the non-movant. *Id*. "A genuine issue of material fact arises when the non-movant presents sufficient evidence upon which a reasonable fact-finder, drawing the requisite inferences and applying the applicable evidentiary standard, could decide the issue in favor of the nonmovant." *C Sanchez & Son, Inc. v. United States*, 6 F.3d 1539, 1541 (Fed. Cir. 1993) (citing *Anderson*, 477 U.S. at 255).

II.     There is no Genuine Issue of Material Fact Suggesting That There was a Constructive Change

The government is entitled to judgment as a matter of law because there is no genuine issue of material fact suggesting that there was a constructive change. In order to establish that there was a constructive change, a contractor must show that: (1) an official compelled it to perform work not required under the terms of the contract; (2) the official directing the change had contractual authority to alter the contractor's duties unilaterally; (3) the official enlarged the contractor's performance requirements; and (4) the added work was not volunteered, but resulted from the official's direction. *Alfair Dev. Co.,* ASBCA No. 53120, 05-2 BCA ¶ 32,990, at 163,515.

In determining what work a contract requires, "clear and unambiguous [contract provisions] must be given their plain and ordinary meaning, and we may not resort to extrinsic evidence to interpret them." *Coast Fed. Bank, FSB v. United States*, 323 F.3d 1035, 1040 (Fed. Cir. 2003) (*en banc*). "An ambiguity exists when a contract is susceptible to more than one reasonable interpretation." *E.L. Hamm & Assoc., Inc. v. England*, 379 F.3d 1334, 1341 (Fed. Cir. 2004). "[T]he language of a contract must be given that meaning that would be derived from the contract by a reasonably intelligent person acquainted with the contemporaneous circumstances." *Hol-Gar Mfg. Corp. v. United States*, 351 F.2d 972, 975 (Ct. Cl. 1965). Thus:

6

> We must seek to put ourselves in the position of appellant at the time he bid on the contract, *i.e.*, we must seek the meaning that would be attached to the language by a reasonably intelligent bidder in the position of appellant, who would be expected to have the technical and trade knowledge of his industry and to know how to read and interpret technical engineering specifications and perform construction work in accordance with such specifications.

*Adrian L. Roberson*, ASBCA No. 6248, 61-1 BCA ¶ 2,857, at 14,915. Moreover, we read the contract as a whole, giving meaning to all of its parts, and "without leaving a portion of the contract useless, inexplicable, void, or superfluous." *JAAAT Technical Serv., LLC*, ASBCA No. 61180, 19-1 BCA ¶ 37,297 at 181,429 (quoting *Certified Constr. Co. of Kentucky, LLC.*, ASBCA No. 58782, 15-1 BCA ¶ 36,068 at 176,131-32).

Here, there is no genuine issue of material fact suggesting that the government compelled Boland to perform work not required by the TOs—or enlarged Boland's performance requirements—when it directed Boland to provide telecommunications systems to the Trailers because the TOs unambiguously required Boland to provide telecommunications systems to the Trailers. The Trailer Specifications indicated that Boland "shall provide temporary facilities as shown in Appendix A – Concept Drawings. . . . [Boland] shall tie into existing utilities as designated and maintain these utilities until completion of the project." (SOF ¶ 4). Concept Drawings GC002 showed communications rooms (SOF ¶ 5), and both the Trailer Specifications and Concept Drawings GC002 stated that those communications rooms had to be "functional for [their] intended use[]." (SOF ¶¶ 4-5). Likewise, the Design Submission Requirements After Award specification stated that the design submittals "shall also include all utilities required for the Temporary Trailers to be operational and usable." (SOF ¶ 7). There is no dispute that telecommunications lines are utilities (after all, the communications rooms are characterized as "utility rooms" in the concept drawings (SOF ¶ 5)). Similarly, there is no genuine issue of material fact but that a reasonable contractor would understand that the communications rooms required telecommunications systems to be functional and operational because the only evidence submitted on that issue—a declaration from the government—clearly indicates that the communications rooms require telecommunications systems in order to be functional and operational (SOF ¶ 5). Therefore, there is no genuine issue of material fact but that the TOs required Boland to provide telecommunications systems to the Trailers, so the government is entitled to judgment as a matter of law on Boland's constructive change claims.

7

## II.     Boland's Arguments to the Contrary are Meritless

Boland's arguments to the contrary are meritless.  Boland first argues that the facts that the government approved its design, the initial ACO viewed the TOs as being insufficiently clear to direct Boland to provide telecommunications systems to the Trailers, and the initial ACO issued RFPs demonstrate that Boland's interpretation is reasonable (63007 app. mot. at 35; 63008 app. mot. at 39; 63007 app. reply at 40-41, 44; 63008 app. reply at 40-41, 44).  However, "clear and unambiguous contract provisions must be given their plain and ordinary meaning, and we may not resort to extrinsic evidence to interpret them."  *R.L. Persons Constr., Inc.*, ASBCA No. 60121, 18-1 BCA ¶ 37,007 at 180,236 (quoting *Coast Fed. Bank, FSB v. United States*, 323 F.3d 1035, 1040 (Fed. Cir. 2003) (*en banc*) (insertion and citation omitted)).  Here, as discussed above, the TOs are not ambiguous.  Therefore, we cannot resort to the extrinsic evidence cited by Boland.  In any event, the government's design approval did not bind the government because the TOs explicitly stated that the government's approval did not constitute a waiver of any contractual rights.  (SOF ¶ 8); *see also Thompson and Street Co.*, ASBCA No. 9843, 64 BCA ¶ 4,489 (holding that a governmental approval does not waive contract requirements).  Moreover, we are not bound by the ACO's interpretation of the specifications and drawings, *Hoboken Shipyards, Inc.*, ASBCA No. 38012, 90-3 BCA ¶ 23,150 at 116,206,[5] and the RFPs never resulted in modifications.  (SOF ¶ 14).

Second, Boland argues that the Trailer Specifications did not require that it tie the Trailers into existing utilities as designated in the Concept Drawings because the "as designated" modifier refers to the later designation that "[t]he facility shall be connected to existing sanitary collection, water distribution, and electrical systems" (63007 app. mot. at 33-34; 63008 app. mot. at 36-37).  The general rule is that a "modifying phrase attaches to its closest referent . . . ."  *Pennzoil-Quaker State Co. v. United States*, 511 F.3d 1365, 1373 (Fed. Cir. 2008).  Here, the "as designated" modifier is closer to the designation that Boland provide Trailers as shown in the Concept Drawings than the designation that the Trailers connect to the existing sanitary collection, water distribution, and electrical systems (SOF ¶ 4).  Thus, the "as designated" modifier refers to the designation that Boland provide Trailers as shown in the Concept Drawings.  In any event, regardless of the "[Boland] shall tie into existing utilities as designated" sentence, the Trailer Specifications required Boland to "provide temporary facilities as shown in Appendix A – Concept Drawings."  As discussed above, Concept Drawings GC002 showed communications rooms, the Trailer Specifications and Concept Drawings GC002

---

[5] In particular, the initial ACO's declaration does not raise a genuine issue of material fact suggesting that a reasonable contractor would understand that the communications rooms did not require telecommunications systems in order to be functional and operational because that declaration expressly acknowledged that users required telecommunications systems for internet and phone service (SOF ¶ 12).

required that those communications rooms be functional and operational, and communications rooms require telecommunications systems to be functional. (SOF ¶¶ 4-5)

Third, Boland argues that, while Concept Drawings GC002 included communications rooms, that did not necessarily require Boland to provide telecommunications systems to those rooms (63007 app. mot. at 34; 63008 app. mot. at 38; 63007 app. reply at 15-16; 63008 app. reply at 15-16). However, as discussed above, Trailer Specifications, Concept Drawings GC002, and the Design Submission Requirements mandated that Boland provide communications rooms that were functional and operational, and communications rooms required telecommunications systems to be functional (SOF ¶¶ 4-5). Thus, the TOs required Boland to provide telecommunications systems to the communications rooms.

Fourth, Boland points to the fact that it relied upon wireless internet and phone connectivity while installing the Trailers to suggest that the communications rooms did not require telecommunications systems to be functional and operational (63007 app. reply at 18-19; 63008 app. reply at 18-19). However, installing the Trailers is different than operating communications rooms in those Trailers, so how Boland communicated while installing the Trailers does not address what communications rooms required to be functional and operational. Thus, the fact that Boland relied upon wireless internet and phone connectivity while installing the Trailers does not raise a genuine issue of material fact as to whether the communications rooms required telecommunications systems to be functional and operational.

Fifth, Boland points to Concept Drawings CU300, which showed other utility lines—but not telecommunications lines—tying into the Trailers (63007 app. mot. at 34; 63008 app. mot. at 38). Absent an express indication to the contrary, it may be inferred from a contract clause's inclusion of certain items that a contractor need not provide the excluded items under the *expressio unius est exclusio alterius* doctrine. *See Symvionics, Inc.*, ASBCA No. 60335, 17-1 BCA ¶ 36,790 at 179,323. However, here, the General Utility Design Requirements expressly indicated that it cannot be inferred from a particular Concept Drawing's inclusion of certain items that a contractor need not provide the excluded items by stating that "[t]he utility design required for this project shall include, but may not be limited to, the items . . . as shown in the Drawings provided within Appendix A – Concept Drawings" (SOF ¶ 6 (emphasis added)). Given that provision of the General Utility Design Requirements, a reasonable contractor would not infer from the fact that Concept Drawings CD300 showed other utility lines tying into the Trailers that it need not provide the excluded telecommunication lines. Rather, reading the TOs as a whole, a reasonable contractor would understand that Concept Drawings GC002 required telecommunications systems to the Trailers—regardless of any omission in Concept Drawings CD300—because Concept Drawings GC002 showed communications rooms, the Trailer Specifications and Concept Drawings GC002 required

9

that those communications rooms be functional and operational, and communications rooms require telecommunications systems to be functional (SOF ¶¶ 4-5).

In sum, none of Boland's arguments have merit.

<u>CONCLUSION</u>

We deny Boland's motions for summary judgment, and grant the government's cross-motions for summary judgment. The appeals are denied.

Dated: November 14, 2022

JAMES R. SWEET
Administrative Judge
Armed Services Board
of Contract Appeals

I <u>concur</u>

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I <u>concur</u>

J. REID PROUTY
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

10

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 63007, 63008, Appeal of David Boland, Inc., rendered in conformance with the Board's Charter.

Dated:  November 15, 2022

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals